**TRUSSELL MFG. CO. v. IRVING–PITT MFG. CO.**

No. 3846.

District Court, E. D. New York.

Aug. 20, 1930.

Fraser, Myers & Manley, of New York City (Arthur C. Fraser and Louis E. Giles, both of New York City, of counsel), for plaintiff.

Duell, Dunn & Anderson, of New York City (Charles W. Hills, of New York City, and C. Earl Hovey, of Kansas City, Mo., of counsel), for defendant.

CAMPBELL, District Judge.

This is an action in equity in which an injunction, accounting, and damages were prayed for, because of the alleged infringement of patent No. 1,025,170, issued by the United States Patent Office to Clarence D. Trussell, assignor to Trussell Manufacturing Company, for loose-leaf binder, dated May 7, 1912.

The patent has expired since the institution of this action, and the question of injunction therefore requires no further consideration.

The plaintiff's title to the patent is conceded.

The defense on which the defendant relies is invalidity, as its counsel conceded on the trial that, if the patent was valid, the defendant infringed, and an examination of the alleged infringing device, which it was stipulated had been sold within the jurisdiction of this court during the six-year period immediately preceding the filing of the bill of complaint in the instant suit, convinces me that such is the fact.

This suit is based on claims 6, 7, and 8 of the patent in suit, which read as follows:

"6. In a binder, a flexible cover having its back portion split on its inner side to form flaps, and a metal back plate inserted in such split portion, and the flaps fastened down against it to embed it in such back portion.

"7. In a binder, a flexible cover having its back portion split on its inner side to form flaps, and a metal back plate inserted in such split portion and cemented therein.

"8. In a binder, a flexible cover having its back portion split on its inner side to form flaps of tapering thickness, and a metal back-plate cemented in such split portion."

After describing other features of the invention, the patentee in his specification says: "The present invention also relates to the construction of a loose leaf book, and specifically to the cover or back and its connection with the ring mechanism" (page 1, lines 27–30)—and the invention of the alleged infringed claims with which we are concerned in the suit at bar relates to a binder cover having embedded in its back portion a metal plate G, to which the metal structure of the binder may be firmly secured.

This is fully described by the patentee in his specification:

"The book back A' is of novel construction. The leather sheet is slitted from the middle toward the sides to form flaps i i (Fig. 12). These flaps are turned up and the metal back plate G (Fig. 8) which is suitably curved, is inserted beneath them and cemented both to the integral back portion j and on its upper side to the flaps i i. It thus forms a stiffening plate embedded in the leather of the book back. Its upturned end portions form ears h h. To fasten the book back thus formed to the ring mechanism, it is only necessary to bring the parts together and turn down the ears h h over the ends of the sheath plate F." Page 2, lines 69–83.

Each of the claims in suit calls for "a flexible cover having its back portion split on its inner side to form flaps," and the cover is described by the patentee in the specifications:

"This cover may as heretofore be constructed of a single integral sheet of leather or other suitable material, so that the sides or flaps of the book back A' are all made of the one sheet." Page 2, lines 38–42.

Defendant contends that because in none of the claims in suit is it specified that the covers and back shall be integral, the claims, if they cover anything of a patentable nature, apply equally as well, and would be anticipated or be infringed by a structure having the other elements of the claim, in which the two side covers and the back are made integral, in one piece, or are not made integral, but are constructed of two or more pieces, which may be spliced or cemented together on the back plate, or in any other manner form a cover on which the language of the respective claims will fairly read.

This contention of the defendant is not sustained, not only because of the description of the cover set forth in the specification, supra, but because, if the back and cover construction were made in separate pieces and spliced or cemented together on the back plate, you could not properly define the binder as one of which the cover has a back portion split on its inner side to form flaps. The disclosure by drawing and description of the patent in suit would have no application to a cover built up of pieces spliced or cemented together, as one part thereof would not be a portion of another, nor would it be properly defined as being "split."

The elements of claim 6 are: In a binder, a flexible cover having its back portion split on its inner side to form flaps, and a metal back plate inserted in such split portion, and the flaps fastened down against it to embed it in such back portion.

This would cover any appropriate manner of securing the parts together.

Claim 7 differs from claim 6 in that it provides for cementing the metal back plate in the split portion.

Claim 8 differs from claim 7 in that it is provided that the flaps are to be of tapering thickness.

The invention of the claims in suit is clearly described by the specification and drawing of the patent in suit, and each of the claims in suit reads on the defendant's alleged infringing structure.

Defendant's alleged infringing structure (Plaintiff's Exhibit 3) includes the broad features of construction covered by claim 6, the cementing of the parts together, as specifically covered by claim 7, and the tapering of the flaps, as specifically covered by claim 8.

No evidence was offered by the defendant to prove the defense of laches, and there is nothing in the record to sustain such defense; therefore it requires no further consideration.

The defendant makes a point of the method pursued by plaintiff in marking as

patented the articles manufactured by it under the patent in suit, but it does not seem to me to go to the question of validity, nor is any authority cited that would sustain such contention.

It is true that the marking was indistinct on some of the exhibits, but on others the witness Trussell read them, but I am not convinced that the plaintiff was deliberately failing to mark its manufactured product with the patent notice required by statute.

Defendant contends that the claims of the patent in suit are invalid because by the first office action in the Patent Office a division was required between various claims of the application, which were divided into three groups, and no disclaimer was filed; but I can see no force to this contention because, as a result of amendments and cancellations of certain claims of the application, the requirement for division was withdrawn.

We are thus brought to the main defense, that of invalidity based on the prior art.

Defendant's greatest reliance is placed upon Von Schlegell patent, No. 890,877, of June 16, 1908, and Friedrichs German patent, No. 207,041, but I will consider all the patents to which reference is made in defendant's brief.

Patent No. 794,536, issued to John L. McMillan, for ring book binder, dated July 11, 1905, discloses a flexible binder having a stiffening plate C in the back. The manner in which the plate and covering material are secured is not described in the specification, but, as indicated by the drawing, the plate is merely secured between two layers of material. The witness Wadsworth described the plate or stiffening member C as being "mounted against the back portion of the cover, as shown best in Figs. 2 and 3 of the McMillan drawings, and which is held in position against the back of the cover by a linen strip which is apparently cemented thereto."

This patent shows a cover construction radically different from that of the claims of the patent in suit; one purpose of slitting the back to receive the plate being to overcome the necessity of the use of a binder strip.

Patent No. 643,380, issued to Kendig & Coleman, for temporary binder, dated February 13, 1900, does not disclose any specific form of cover construction, but relates to the combination of the metal structure with sections hinged between the cover and the back. There is a somewhat indefinite reference in the specification to a metal plate 23, embedded in the back 3 near its end, to which the end pieces 9 are secured by rivets or screws, but there is no disclosure as to the material of which the back is constructed, or as to the manner in which the plate 23 is embedded. I do not believe that the fact that the cover, back, and intermediate sections 2, 3, and 4 are represented in the drawings by parallel lines having hatching extending continuously from one to the other, is sufficient to justify the holding that they constitute one integral piece; on the contrary, it seems clear to me that the cover is a built-up one, comprising the usual boards and fabric covering material, and that the parts 2, 3, and 4 of the cover construction are intended to comprise separate elements hinged together by some other material.

The cover construction of this patent would hardly be made of a single thickness of leather, because the outer surface is the stronger or tougher part of leather used in single-ply loose-leaf book covers, and, if the hinges were formed by grooving them on the opposite surfaces, only the weaker portion would remain; the stronger having been cut away and the cutting of the outer surface to form a hinge, and leaving a joint of raw material, would make a construction of unsightly appearance.

I cannot accept a construction based entirely on the representation in the drawings as a basis for a decision as to an alleged anticipation; on the contrary, as I read the patent, the construction shown therein differs widely from that of the claims of the patent in suit, and neither anticipates nor limits the patent in suit.

Patent No. 890,877, issued to Frederick Von Schlegell, for loose-leaf book, dated June 16, 1908, discloses a loose-leaf book having a hinged metal structure as a support to the page-holding rings or horns F, D; all of the claims of the patent being specifically limited to that structure. Part B of the metal structure is embedded in the back, and part a is embedded in the portion of one of the covers A nearest the hinge, but it is not made clear in the specification how the plate a is secured to the cover.

According to the specification, the upper cover C is to be preferably of leather or flexible material, and to extend over the metal back B, and the cover A is also to be preferably of leather and apparently extended over the surface of the reinforcing plate a.

I find no warrant in the specification for the contention that the covers A and C are

split to produce the material which extends over the inner and outer surfaces of the plates, and certainly I am not prepared to hold merely upon the manner in which the material of the covers is cross-hatched in some of the figures of the drawings that the cover portions are split at their edges, and that the flaps after they have been split have been brought down against and presumably cemented to the metal plate inserted between the flaps; on the contrary, the disclosure of this patent is more consistent with the assumption that the cover is of the usual covered board construction, well known at the time of that invention, comprising an outer layer of leather extending over the back of the plates, and having edges wound over the boards of the covers, and inner layers of leather covering the under surfaces of the covers and extending over the inner surfaces of the plates.

The disclosure of this patent differs radically from that of the claims of the patent in suit, in that the cover structure is of the built-up type, and there is no suggestion either in the specification or the drawings of the patent of anything in the nature of a piece of flexible material split in opposite directions to produce flaps, under which a stiffening and anchoring plate may be secured.

Defendant's contention is not supported by the introduction of the patents to Safford and Allen, Nos. 477,456 and 500,838, disclosing machines adapted to split or skive a small piece of leather by cutting into a surface of the sheet a gradually increasing depth from a line somewhat distant from an edge towards the edge, because, even if machines disclosed in those patents had been in use they might have beveled a piece of leather to any desired degree or angle, or split or skived comparatively small pieces of leather, but they would not accomplish or afford any suggestion of cutting from a leather cover of two inwardly directed opposed flaps of a width and strength sufficient to receive and hold the back plate as disclosed in the patent in suit.

Even if I agreed with defendant's contention as to what is shown by the drawings of this patent, which I do not, its reliance being on the drawings, and the specifications containing no suggestion of the construction for which it contends, this patent does not anticipate. A. R. Mosler & Co. v. Lurie (C. C. A.) 209 F. 364, 367; Canda v. Michigan Malleable Iron Co. (C. C. A.) 124 F. 486, 492; Atlantic, Gulf & Pacific Co. v. Wood (C. C. A.) 288 F. 148, 155.

This patent does not anticipate or limit the construction of the patent in suit.

German patent No. 207,041, issued to Gebruder Friedrichs, for book with interchangeable leaves, published February 19, 1909. This patent was not set up in the answer and cannot be considered for the purposes of anticipation, but only to show the state of the prior art.

The patent discloses a loose-leaf binder having a metal construction whereby the leaves might be joined together in groups. No cover construction is described, and the invention was not dependent on any particular cover construction.

Defendant's reliance is based upon a mere suggestion which it alleges is found in the drawing, particularly upon the modification illustrated in Fig. 7.

In describing the modification illustrated in Figs. 4, 5, and 6, it is stated in the patent specification that the bent plate f is rigidly fastened to the back a of the book. The sheet holding fingers i, i are secured to a plate h, hinged at g to the plate f, and a second set of fingers b, b are secured to a plate m, which is hinged at k to the plate h. Means are provided whereby the plates and ring-holding fingers may be locked in the positions in which they are indicated in Figs. 4 and 5.

In the modification illustrated in Fig. 7, the set of fingers b, b, and the plates m, are omitted, and the plate h, which carries the fingers i, i, is held directly by a lock.

Defendant's contention is that in Fig. 7 it is shown that the back a of the binder is split away to form a flap underneath which the plate f is secured, but that contention is not sustained. There is no statement to support any such contention to be found in the specification, and in the absence thereof I cannot assume that Fig. 7 discloses a specifically different construction.

I do not find any satisfactory evidence that the plate f is embedded in the back by splitting away a portion of the material to form a flap; on the contrary, it appears to me to be more reasonable to assume that such a layer of lining material as there may be along the inner surface of plate f is applied as a separate strip cemented to the plate after the plate has been secured to the back.

The covers in use at the time of the publication of this patent were of the built-up type, and that was the type of cover in the patentee's mind; but, even if the use of solid or integral or single-ply material for

the entire cover of a book was known at that time, I fail to see wherein this patent taught anything to the patentee of the patent in suit, in that the most that defendant contends is that it discloses a single flap which is of a width equal to the width of the back plate, so as to be joined to the body portion of the book back, along one edge of the plate, and separated therefrom along the opposite edge.

Such a construction is radically different from that claimed in the patent in suit of a flexible cover having its back portion split in its inner side to form flaps, which may be of tapering thickness, with a metal back plate inserted in such split portion and cemented therein, or securing it therein in any other appropriate manner.

This patent, being a foreign patent, requires no further consideration, because, even had it been pleaded as an anticipation, it would have been ineffective, because it certainly does not exhibit the invention of the patent in suit in such full, clear, and exact terms as to enable any person skilled in the art to practice it without the necessity of making experiments. In re Ek, 57 App. D. C. 203, 19 F.(2d) 677; Hanifen v. E. H. Godshalk Co. (C. C. A.) 84 F. 649, 651.

Patent No. 380,289, issued to John A. Kelly, for shoe or gaiter, dated March 27, 1888, and patent No. 850,862, issued to Hezekiah C. Welch, for arch-supporting shoe, dated April 16, 1907, are taken from the nonanalogous art of shoemaking, and the disclosure of shoe soles of leather having portions split from the edge inwardly to receive an inserted metal plate is a radically different construction from that of the invention of claims 6, 7, and 8 of the patent in suit, and these patents would not have taught the patentee how to accomplish the invention of the claims in suit, even if he was under an obligation to search the art of shoemaking, much less anticipate them.

Patent No. 986,910, issued to J. C. Dawson et al., for loose-leaf binder, dated March 14, 1911, and patent No. 1,156,160, issued to Lawrence F. Lewis, for temporary binder, dated October 12, 1915, were cited by the Examiner at the Patent Office against other claims, but not against claims 6, 7, and 8 of the patent in suit, and, as I am unable to find that they disclose the invention of the claims in suit, or would in any way teach that invention to the patentee, they require no further consideration.

Patent No. 778,070, issued to William P. Pitt, for loose-leaf book, dated December 20, 1904, introduced only to show the state of the art, requires no extended consideration, as its disclosures, instead of suggesting the invention of the patent in suit, simply emphasizes some of the important features of the improvement made by the invention of the patent in suit.

Patent No. 974,831, issued to L. F. Scherzinger, for loose-leaf binder, dated November 8, 1910, was introduced only to show the prior state of the art.

In the attempt to make this patent pertinent to the issue, defendant again is compelled to rely on the drawing, because there is nothing in the indefinite specification, which says that the patented device comprises covers $i$, $i$, having an integral back $3$, and a metal structure secured to said back by a connecting strip $4$, lying inside the back, to warrant the conclusion that the covers comprise parts of a single piece of material, which are split outwardly in opposite directions to form flaps underneath which the edges of the connecting strip $4$ may be secured. The construction shown in this patent did not even suggest the invention of the patent in suit.

Other patents were offered in evidence on behalf of the defendant, either as alleged anticipations or pertinent prior patents, but none of them are more pertinent than the patents which I have hereinbefore discussed, and I see no reason for their further consideration.

No authorities need be cited to show that the patentee is conclusively presumed to have had full knowledge of the prior art at the time of making his invention, but, even with such knowledge, he would not have had even a suggestion of the using of a single sheet of flexible material as a cover and back portions of a loose-leaf binder, and of embedding between the inner and outer surfaces of the back portion a stiffening plate of metal adapted to serve as a fastening element for the metal structure of the binder. This discovery by the plaintiff constituted invention, and the presumption of validity of the claims of the patent on which this action is based is in no degree weakened by the failure of the Examiner at the Patent Office to cite any reference offered on the trial of this action.

No better proof of the fact that the structures of the claims of the patent in suit represent invention and not mere mechanical skill could be found than the fruitless efforts of the defendant to accomplish the result and escape infringement.

What the patentee of the patent in suit accomplished was not a mere improvement, but something radically new, of great durability, and of a much better appearance than any cover known up to that time. This was invention.

The patent is valid, and the defendant has infringed all the claims upon which this suit is based.

A decree may be entered in favor of the plaintiff, against the defendant, for an accounting and damages, with costs and the usual order of reference, but not for an injunction.