## YORK ICE MACHINERY CORPORATION v. L. & K. ICE CORPORATION.

District Court, S. D. New York.

April 2, 1934.

Clarence D. Kerr, of New York City, Parker Dodge, of Washington, D. C., and Charles Neave, of New York City, for plaintiff.

Ernest W. Bradford, of Washington, D. C., and Ambrose L. O'Shea, of New York City, for defendant.

ALFRED C. COXE, District Judge.

This is a suit for infringement of two Shipley patents, Nos. 1,718,310 and 1,718,-313, for a method and apparatus for cooling liquids, and for an evaporator, both issued June 25, 1929. The defendant is the owner and operator of an ice making plant at Newark, N. J., alleged to infringe both patents. This plant was designed and installed by the Frick Company, of Waynesboro, Pa., and that company is conducting the defense of the present suit.

The claims relied on in Patent No. 1,718,-310 are Nos. 1, 2, 4, 5, 8, 9, 10, 11, 14, and 15; and in Patent No. 1,718,313 Nos. 1, 2, and 3.

The defenses are invalidity and noninfringement.

The two patents relate essentially to ice manufacture on a large scale for commercial use; and the method normally employed for that purpose is to place the water to be frozen in tapered cans, and then circulate about the exterior faces of the cans brine which has been cooled by contact with evaporators containing a liquid refrigerant, such as ammonia.

Prior to Shipley, the two freezing systems most generally in use in can ice freezing were the continuous coil system and the shell and tube brine system. The former utilized a large number of continuous coils of pipe, between 200 and 1,200 feet in length, usually immersed in the brine tank between the cans; and in the latter the ammonia was introduced into a large boiler or shell containing horizontal pipes, through which the brine flowed. With the continuous coil system, it was impossible to keep the long coils flooded at all times with liquid refrigerant, particularly if the brine was circulated rapidly; and this necessarily kept the heat transfer rate low. Moreover, the system lent itself to pipe breakage, and was inconvenient for group handling of the cans. The shell and tube brine system also had serious limitations, inasmuch as the agitation of the ammonia within the shell was caused entirely by evaporation, and there was little opportunity for the liquid to circulate and recirculate so as to develop a maximum heat transfer rate. Furthermore, there was always a tendency of the

brine to freeze in the pipes, causing them to burst.

Shipley's efforts were directed towards improving the continuous coil system; and in the first patent, No. 1,718,310, he shows the evaporator coils confined in a closed duct or brine raceway, separate from and parallel to the brine tank, through which the brine is circulated at a rapid rate between and around the coils. The evaporator coils in the preferred form of Fig. 2, consist of a large number of short, vertically disposed risers, connected at top and bottom to a pair of large horizontal parallel pipes called headers. The liquid refrigerant is fed through the bottom headers, which are large enough to keep the short risers constantly replenished with liquid refrigerant; and the gas forming in the risers finds a quick and ready passage to the top headers, carrying with it entrained liquid, and in that way stimulating the heat transfer rate by keeping the interior surfaces of the risers continually in a wet condition. The gas thus generated, and the liquid carried along with it, passes through the top headers to an accumulator or suction trap, in which the liquid and gas are separated. The liquid is returned directly to the lower headers, and the gas flows back to the compressor, where it is compressed and condensed into liquid, and then brought back to the bottom headers.

The second patent, No. 1,718,313, is for an improved form of evaporator for use with the Shipley apparatus of the first patent; and in place of the short vertical risers shown in Fig. 2 of Patent No. 1,718,310, V-shaped tubes have been substituted. The function of these V-shaped tubes is identical with that of the risers of the first patent; but it is asserted that the V-shaped tubes have manufacturing advantages not present in the vertical risers in that they may be more easily assembled and welded.

The Shipley system has met with considerable commercial success. The first installations were made in 1925, and in that year the plaintiff's continuous coil sales absorbed 88.8 per cent. of its business, and its vertical trunk sales 7.9 per cent. By 1929, the vertical trunk percentage had risen to 94.4 per cent., and in 1930 to 99.7 per cent. During this same period, the continuous coil sales fell off correspondingly, so that in 1930 the continuous coil portion of the plaintiff's business was practically nonexistent. Undoubtedly, the plaintiff in its sales efforts featured the Shipley system; but that does not fully account for the complete domination of the vertical trunk installations in the plaintiff's business by the end of 1930. Neither does the fact that some plants still prefer the shell and tube brine coolers detract from the merit of Shipley's invention, for Shipley was the first to employ in large scale ice production very high brine velocities; and the efficiency of the shell and tube systems has, no doubt, been considerably improved since the advent of Shipley by increasing the brine velocity through those coolers.

The typical claims of the first patent, No. 1,718,310, are Nos. 2, 4, 8, 11, and 15. Claim 2 is for "the combination of a brine tank; a flow enclosing duct communicating at its ends with opposite ends of said tank; an evaporator cooler in said duct including headers and risers, said cooler extending substantially the full height and width of the duct, and throughout substantially the entire length thereof; and means for drawing brine from said tank and forcing it under pressure head through said duct and back into said tank."

Claim 4 is substantially the same as claim 2, except that each riser is stated to have a point of connection with one header "below the point of connection of such riser with the other header." Claim 8 is also similar to claim 2, except that it specifies that the tubes connecting the header shall have a "rising gradient at all points from the inlet to the discharge header." Claim 11 adds to the combination of claim 2 "a suction trap; a suction connection leading from said trap; a liquid connection leading from said trap to the first header; a connection for gas and entrained liquid leading from the second header to the trap, whereby a closed liquid circuit through the evaporator and trap is afforded; means for feeding liquid refrigerant to said circuit."

Claim 15 is for a method of cooling liquids, "which consists in circulating the liquid to be cooled over one face of a surface heat exchanger, whose other face is in contact with a volatile liquid refrigerant, at such a rate that the conveyed heat will cause active vaporization of the refrigerant; developing an entraining action on the liquid refrigerant by causing such vaporization to occur in a restricted passage, having a rising gradient; and applying such entraining action to produce a rapid flow of liquid refrigerant over said heat exchanging surface."

In the second patent, No. 1,718,313, claim 1 is fairly typical of the others, and reads:

"(1) In an evaporator, the combination of an upper header; an approximately parallel lower header; and a plurality of bowed

tubes connecting said headers and nested in and substantially confined to the interval between headers."

■ The defendant has cited thirty-four prior art references in opposition to the first patent, No. 1,718,310, but I do not find in any one of them a complete anticipation of Shipley's combination. Indeed, that was conceded by defendant's expert, Brizzolara, when he stated that he "did not recall any specific instance of a reference to the whole patent." And validity is not to be destroyed merely by selecting from the prior art a number of separate elements, and piecing them together into a purely hypothetical construction. Badische Anilin & Soda Fabrik v. Kalle (C. C.) 94 F. 163; Imperial Bottle Cap & Mach. Co. v. Crown Cork & Seal Co. (C. C. A.) 139 F. 312.

It is unquestioned that most of the elements found in the patented combination were old prior to the Shipley invention. This is particularly true of the accumulator. It is also true of the radiator type of evaporator, which is plainly shown in the Pictet drawings appearing in the German publication of 1901. There was nothing new, either, in the general idea of placing the evaporator in a separate compartment adjacent to the brine tank; for that was disclosed in the two Pownall patents, Nos. 964,936 (1910) and 992,589 (1911), and in the De Fosset patent, No. 1,-041,973 (1912). It was old, also, to operate the evaporator coils flooded for the purpose of stimulating the ebullition and entrainment of the liquid refrigerant. This was not only disclosed in a number of the prior patents, but was also fully explained in the Baer article published in 1917. Baer further taught in this same 1917 article that rapid brine agitation resulted in a more rapid transfer of heat.

Shipley, therefore, had at his disposal much of the ground work for an improved system of ice manufacture; but no one up to the time of his invention had appreciated the possibilities of a high velocity duct through which the brine might be driven at a high rate of speed; neither had any one previously devised an apparatus capable of utilizing in commercial ice manufacture the high brine velocities indicated by the patent in suit. The Pownall construction, shown in Fig. 4 of Patent No. 964,936, was obviously not designed for such a purpose, as the duct appears open at the top, and the evaporator coils are structurally insufficient to produce the violent boiling of the liquid so necessary in the Shipley system. I do not think, either,

that the Pictet machine, described in the German publication of 1901, is in any way capable of functioning with Shipley's high brine velocities. This machine has no means to keep the evaporator flooded; nor is there any accumulator or suction trap to separate the entrained liquid from the gas. The machine also lacks a connection to return the entrained liquid to the bottom header; and it is at least extremely doubtful whether the evaporator compartment has a top cover. Moreover, the description is not sufficiently clear to show, with any real certainty, the method of operation.

■ I am satisfied, therefore, that the apparatus claims, Nos. 1, 2, 4, 5, 8, 9, 10, and 11, show invention; and I think, also, that the method claims Nos. 14 and 15 are valid. Claim No. 15 is carefully limited to a rapid brine flow over one side of a heat exchanging surface constructed in such a way as to cause entrainment of the liquid with the gas in a restricted passage having a rising gradient, and a consequent rapid flow of the liquid over such heat exchanging surface; and that is essentially what Shipley invented. A method is patentable, even though it involves mechanical steps; Expanded Metal Co. v. Bradford, 214 U. S. 366, 383, 29 S. Ct. 652, 53 L. Ed. 1034; U. S. ex rel. Steinmetz v. Allen, 192 U. S. 543, 559, 24 S. Ct. 416, 48 L. Ed. 555; and method and apparatus claims may properly be united in the same patent. Elyria Iron & Steel Co. v. Mohegan Tube Co. (C. C. A.) 7 F. (2d) 827, 830.

■ The second patent, No. 1,718,313, requires little consideration, as it is perfectly apparent that the design of the V-shaped coils involved only mechanical skill. Indeed, the prior art references show boiler and heating tubes in almost every conceivable shape and form; and it certainly did not constitute invention to adapt such tubes to Shipley's construction. Claims 1, 2, and 3 of Patent No. 1,718,313 are, therefore, declared invalid for lack of invention.

■■ On the issue of infringement with respect to Patent No. 1,718,310, the defendant first insists that in the Patent Office proceedings the claims were so limited in scope as to exclude the defendant's apparatus. But it is well settled that mere arguments of an applicant for a patent have no bearing on that question; Spalding & Bros. v. John Wanamaker (C. C. A.) 256 F. 530, 534; and unless limitations are placed by the applicant on the claims for the purpose of meeting objections of the Examiners, or otherwise, there is no basis for an estoppel. Watters v. Kny-

Scheerer Corp. (C. C. A.) 68 F.(2d) 27. In the present case, Shipley pointed out before the Examiners various distinguishing features in the references cited against his application, but there was nothing in the nature of a limitation on the claims; and certainly the cancellation of original claim 8 did not operate as an estoppel with respect to the other claims which were allowed.

There is little difference between the Frick construction and the Shipley arrangement, except that in the Newark installation each of the two brine tanks has two brine flow inclosing ducts located at opposite sides of the tank, in each of which there is an evaporator. The top and bottom headers of the evaporators are, however, substantially identical with those shown in the Shipley patent, and the riser coils have a continuously rising gradient from the bottom to the top headers. These risers are in the form of a double V, and are somewhat longer than the plaintiff's; but this is clearly insufficient to avoid infringement. The brine is forced through the ducts and around the evaporator coils at a high rate of speed, developing the same circulating and entraining action off the liquid refrigerant as found in the Shipley system; and the combination of means adopted is in all respects substantially the same as the plaintiff's.

It is insisted, however, that the defendant's apparatus operates on a different principle from the plaintiff's inasmuch as the ammonia passes through two successive stages of expansion prior to its entry into the evaporator, instead of one stage, as in the Shipley system. This is what the defendant terms precooling; but it has nothing whatever to do with the claims of the patent, for they do not relate to the treatment of the refrigerant between the compressors and the expansion float valve of the evaporator.

The installation was made in the Newark plant prior to the issuance of the Shipley patent, No. 1,718,310, on June 25, 1929, but the defendant had full knowledge of the plaintiff's rights before the contract was let to the Frick Company in December, 1928. The plaintiff had previously submitted to the promoters of the defendant company location drawings for its own system, and the fact that the installation actually made followed closely the general lines of these drawings is persuasive evidence that the Frick Company drew liberally on the plaintiff's method and apparatus for the design and arrangement of the plant.

There may be a decree declaring claims 1, 2, 4, 5, 8, 9, 10, 11, 14, and 15 of Patent No. 1,718,310 valid and infringed; and holding claims 1, 2, and 3 of Patent No. 1,718,313 invalid for lack of invention; but without costs.