## BEADLE v. F. W. WOOLWORTH CO.
### No. 7769.

District Court, E. D. New York.
Jan. 7, 1937.

Hoguet, Neary & Campbell, of New York City (W. H. Free and Mark N. Donohue, both of New York City, of counsel), for plaintiff.

L. F. Dittenhoefer and Darby & Darby, all of New York City (W. A. Darby, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of patent No. 1,916,943 issued to Blanche E. Beadle for hair former granted July 4, 1933, on an application filed February 23, 1932.

The plaintiff has title to the patent in suit, and notice of infringement was given before the commencement of this suit.

The defendant has interposed an answer setting up the defenses of invalidity and noninfringement.

This suit is based on claims 5, 8, 9, and 14 of the patent in suit, although more claims were alleged in the bill of complaint.

The sale by the defendant of the hair formers, Exhibits 1, 2, 3, and 4, which are alleged to infringe, within the Eastern District of New York, subsequent to the issuance of the patent and within six years prior to the commencement of this suit, is admitted.

Plaintiff contends that these formers represent two styles illustrated by Figs. 1 and 2 of the patent in suit.

Defendant contends the patent in suit is invalid by reason of anticipation and noninvention over the prior art.

Defendant concedes that, if the patent in suit is valid Exhibit 1 infringes, but contends that Exhibits 2, 3, and 4, in any event, do not infringe.

The patent in suit relates to a hair dressing device described as a "hair former," and also known to the trade as a "former" or "roller."

A hair former is normally adapted to be worn publicly in the hair during the waking hours of the day, as distinguished from ordinary hair curlers and wavers which are usually worn privately at night, for the sole purpose of distorting the hair so that it will have a curl or wave after they are removed.

Three forms of the former or roller, described in the patent in suit, are illustrated in Figs. 1, 2, and 3 thereof, all

possessing the same general characteristics, that is, they are necessarily formed of a pair of equal parallel side members of pliable "wire such as copper, iron or other more or less bendable material * * *" "which is relatively non-resilient, so that they may be bent into various shapes and will retain their shape." The wire is covered with "fabric, rubber or the like." The two side members are "joined together at or adjacent their ends" in such parallel

832

relation, and form an elongated hair-receiving slot between them. The resulting effective length of the slot for hair-receiving purposes is something less than the length of the members, and the ends project at either side free of hair. By these projecting ends, which serve as handles, the side members may be grasped, shaped, and otherwise manipulated by the thumb and fingers of the user, who at all times has hold of the ends of both side members, completely controlling them and enabling her to shape or otherwise manipulate them freely without grasping them intermediate their ends for that purpose.

In one form of the roller, illustrated in Fig. 1 and described in the patent at page 1, lines 42–71, the parallel side members 4 are connected together at their ends by self means, that is, the connecting means are integral links of the same pliable wire, and there are two clips 6, spaced inwardly from the ends of the members and embracing both of them, so as to positively define the hair-receiving slot 18, and leave the completely and positively closed loops 10 outside of the clips 6. In the preferred construction of the patent in suit, and in both of plaintiff's and defendant's devices, this form of the roller is made of a single piece of wire, the ends of the wire being "suitably joined together beneath one" of the clips 6.

In another form illustrated in Fig. 3, and described in the patent at page 1, lines 78–88, the parallel side members 24 are closely connected together at their ends by the clasps 25. The clips 26 are adjustable along the members to vary the length of the hair-receiving slot 28, and completely and positively close the loops 30, which are formed at the ends of the device by the connection 25, between the extremities of the side members 24. Plaintiff's early commercial device, Exhibit 13, is constructed precisely as illustrated in Fig. 3, but her present commercial embodiment of this form, Exhibit 21 (green card), and that of her licensee, Exhibit 20, employ but one clasp to connect the free ends of the single wire in an arrangement similar to that illustrated in Fig. 1.

The third form of the roller, illustrated in Fig. 2 of the patent, and described in the patent at page 1, lines 72–77, may be described as the forms of Figs. 1 or 3, with the respective clips 6 and 26 removed or omitted, so that the end loops still remain, but they are not completely or positively closed at their inner ends as by the clips 6 and 26 of Figs. 1 and 3. The reduction of the effective length of the hair-receiving slot 18 is occasioned by the close coupling together of the ends of the side members 14 by the clasps 16. The end loops are not positively or completely closed, but the close proximity of the side members restrain the hair from slipping into the physical extremities of the slot, and the side ends extend free to either side of the hair in the slot, and serve as handles for manipulating the roller in use.

Where, instead of employing clasps 16 at the end, the wire is bent double as in Fig. 1, as close a coupling is difficult of attainment, because the wire covering does not permit sharp angle binding, and therefore resort is had to pinching the two wires together at the ends of the roller, as in plaintiff's early commercial models Exhibits 11, 12, and 14, and her present model Exhibit 21. These exhibits all provide the extending ends or handles by shortening the effective length of the hair-receiving slot.

Ends or handles are provided in these exhibits by shortening the effective length of the hair-receiving slot, by the simple expedient of pinching the wires together. The end loops thus provided are not as completely and positively closed at their inner end as the loops in Figs. 1 and 3 and Exhibits 1, 16, 18, and 21 (red card), which are closed by intermediate clips.

In use the hair is inserted in the elongated slot between the parallel side members, and, because of the reduction of the effective length of the hair-receiving slot, the hair does not enter the opposite loop ends. The loop ends project free to either side of the hair and serve as flat handles, which are grasped by the thumb and fingers, and rotated to turn the roller about its longitudinal axis, so as to roll up the hair about it. Both side members, which extend to the extremities of the roller, are grasped by the user during the rolling operation, and thus the entire length of both side members are under the user's control, and may be worked or shaped at will without touching them at any other point. The forming operation being completed, the ends of the device are turned inwardly so as to press against and hold the hair and roll thus formed, and thereby lock the whole against unwinding. The roller is completely pliable, and may be bent anywhere along its length so that

clips 6 will not show if the clip form is employed. It is adapted to any desired width of hair roll, and may be shaped to fit any size or shape head or neck. The infolded ends being soft and well rounded, they do not cut the hair, or press or stick uncomfortably into the neck or scalp. The device is light in weight and invisible in use, so that the hair roll formed thereby appears soft and natural, instead of stiff and artificial.

The plaintiff has been in the business of manufacturing and selling hair dressing and curling devices at Springfield, Mass., since 1915, through partnerships under various names, to whom she gave licenses under the several letters patent issued to her between 1919 and the date of the patents in suit.

The defendant is a dealer in the formers or rollers which are alleged to infringe herein, and is carrying on business in this district.

The defendant was a customer of the plaintiff before it commenced to market the devices of which complaint is made herein.

Prior to 1929–30, large numbers of women had been wearing their hair in what was called a short boyish bob, but about that time a change of style called for a longer length, and during the time the hair at the back of the head was growing in length plaintiff contends that it was difficult to turn up the hair and secure it with the devices then on the market, because the hair was too short, and that, because of the demand for an invisible, soft, light, and comfortable device which could be shaped to conform to any size head or neck, or any size roll, for the purpose of rolling the hair, and being left in as a hair dressing device, she developed the device of the patent in suit in 1930.

Plaintiff first sold the device in October, 1931. Shortly thereafter plaintiff took her various models to her patent attorney and asked him to prepare a patent application. Due to a lack of money her patent application was not filed until February 23, 1932.

Plaintiff made every effort to have the patent issued promptly, but was delayed by interference with one Jacobs, whose application was filed subsequent to hers. The interference was settled by Jacobs filing a concession of plaintiff's priority, and plaintiff granting to Jacobs' assignee,

A. J. Donahue Corporation, a license, for which the licensee pays plaintiff a royalty. Plaintiff's patent rollers have been patent marked.

This suit is based on claims 5, 8, 9, and 14 of the patent in suit.

Claims 5 and 9 are directed to the fixed clip form. Claims 8 and 14 relate to the form without intermediate clips.

The claims in suit read as follows:

"Claim 5, A hair forming device comprising in combination, side members of bendable metal covered with non-metallic material held together by clasps in spaced relation to provide an elongated slot there between, and end portions in the form of closed loops located outside of said clasps to afford a stable support for grasp of the thumb and fingers whereby to ensure bending and shaping of the side members under complete control of the operator for application to the hair."

"Claim 8, A hair dressing device including a pair of hair receiving members composed of covered wire, clasps to hold said members together to create a slot there between, and loops comprising the ends of said device, said loops being formed of substantially the same material and of the same size as said members to afford a stable support for grasp of the thumb and fingers whereby to ensure bending and shaping of the side members under complete control of the operator for application to the hair."

"Claim 9, A hair dressing device composed of a single piece of covered wire bent to form side members, clasps to secure said members together and at a distance from the end of the device to create closed loops to afford a stable support for grasp of the thumb and fingers whereby to ensure bending and shaping of the side members under complete control of the operator for application to the hair."

"Claim 14, A hair former consisting of a pair of substantially parallel side members of flexible material, and means connecting the corresponding ends of the members together at their extremities to form a hair-receiving slot there between."

The defendant offered in evidence the following patents which it contends support its defense of invalidity by anticipation:

French patent No. 658,766 to Pierre Robin for hair curlers, published June 19, 1929. That patent relates to "Various hair

curlers," and is directed to one which does "not get lost in use." Figs. 3 and 4 in a superficial way somewhat resemble plaintiff's clipped roller. They are described in lines 7–11 as an "elastic sliding curler" with a "restraining strand," and in Fig. 4 this restraining strand is the same size as the main strand. This makes an elastic ring like a rubber band. Being elastic, it is utterly impossible to use the Robin device as a hair roller, functioning like the pliable non-elastic device in suit, for holding the hair as a former for dressing purposes, and the ends could not be turned under to hold anything, because they are not pliable as required. The patent does state that the curler may be made of "elastic or non-elastic materials," but the patent contains no suggestion of the way in which the result sought by the patent in suit can be accomplished. Defendant relies upon the drawings of that patent, that were neither adapted nor used to perform the function of the device of the patent in suit. Such a disclosure does not anticipate, nor does it sustain, lack of invention, for the reasons that were stated by me and the authorities cited in Trussell Mfg. Co. v. Irving-Pitt Mfg. Co. (D.C.) 42 F.(2d) 750, which on appeal is reported in Trussell Mfg. Co. v. Wilson-Jones Co. (C.C.A.) 50 F.(2d) 1027.

■ That patent is a foreign patent and does not support the defense of anticipation, as it does not, as required of such patents, disclose and describe a complete and operative device which fits the subject matter in suit precisely as does the patent in suit. Seymour v. Osborne, 11 Wall. (78 U.S.) 516–525, 20 L.Ed. 33.

Patent No. 1,844,644 issued to Henry Eisler, assignor to Emeth Financial Corporation, for hair device, granted February 9, 1932, on an application filed July 8, 1931.

This is the only patent for a hair former offered in evidence by the defendant, all the remaining patents so offered being directed to hair curlers or wavers. That patent was cited as a reference by the examiner in the Patent Office, but the patent in suit issued over such reference, and I find nothing more pertinent in the art relied upon by defendant than the disclosure of that patent.

The Eisler patent does not show the end loops called for in claims 5, 8, and 9 and formed by the parallel side members, so that the operator may control the shaping of these side members from the ends of the device. In the Eisler device it is not possible to control both side members, as but one of them is held in the fingers. Eisler it is true mentions pliable material in his specification, but does not indicate the degree of pliability, and as indicated in Fig. 3 and described at page 1, lines 56–60, only the end extensions are bendable in use, causing a stiff unnatural hair roll, and preventing bending of the device anywhere along its length to fit any sized head or neck, or any sized roll.

In Eisler the side members are not connected together "at their extremities" as required by claim 14 of the patent in suit, but are connected together intermediate the ends of the one member with its ends projecting. It does not anticipate the claim in suit of the patent in suit.

Patent No. 1,492,895 issued to Louis Philip Putt, for hair curler, granted May 6, 1924, on an application filed July 11, 1922. That patent which was cited as anticipating claim 14 is for a hair curler and not a hair former. It is not worn as a dressing device, but is removed when it is desired to dress the hair. As described in the specification, its function is to be "twisted in order to effect an exceedingly tight hold upon the hair," and then the hair is wrapped around the curler and held in place by turning the ends under. There is no other similarity. In Putt the side members are not connected together at their extremities as required by claim 14 of the patent in suit, neither are Putts twisted and wrapped ends loops, and therefore there can be no control of both side members when the device is in use.

That patent does not anticipate.

Patent No. 1,523,962 issued to Paul Hitzigrath, for hair curler, granted January 20, 1925. That patent describes a hair curler and not a hair dressing roller. Three instead of two members are disclosed which are connected at their ends by "heads" 8. As illustrated in Fig. 2, the outside members are spread apart in one plane, and the inside or third member is bent outwardly at right angles. After inserting the hair between the first two and the third members, the three are squeezed together to crimp the hair therein, and after that the hair is wound on the three members and the heads bent over.

That patent does not anticipate.

Patent No. 1,425,527 issued to Harry H. Klein, for hair waver, granted August 15,

1922, on an application filed June 21, 1921. Referring to Fig. 2 of that patent defendant states that it is "identical with the structure of the hair waver being sold by the Defendant and identified in this case as Plaintiff's Exhibits 2, 3 and 4," and argues that, if the claims in suit are held to cover defendant's devices, those claims are anticipated by the Klein patent. In Fig. 2 of that patent is shown a flattened wire ring, the first step in the formation of the twisted hair waver shown in Fig. 1, "and when finally configurated in the form shown in Fig. 1 it constitutes the completed hair waver. This completed hair waver may be utilized by curling the hair around its middle portion 9 and then bending its ends 9a upon the curled hair in the well known manner." That patent is used in an entirely different manner than plaintiff's roller. In that patent the hair is wrapped or wound wholly around the outside members in a spiral in the usual manner of hair curlers, instead of inserting the hair in a slot formed between two members. Defendant refers to the statement in that patent that "the ring 2, instead of being twisted to form the body shown in Fig. 1, the same is simply collapsed to form the slotted bar 16 as shown, which bar thus constitutes the waver, and the same may be utilized in the regular manner." This does not in my opinion tend to sustain defendant's contention, as "the regular manner" means the manner previously described, that is, "by curling the hair around its middle portion," which is the only way described, and that certainly is not the manner of use of the device of the patent in suit. The ends of Exhibits 2, 3, and 4 are pinched together to decrease the effective length of the hair receiving slot and thus form end loops into which the entry of the hair is retarded, so that the ends extend free to either side of the hair in the slot and serve as handles whereby the side members may be shaped and manipulated. That is not in accordance with the disclosure of the Klein patent.

British patent No. 20,439, A. D. 1903, issued to Lavinia Lenton, for improvements in hair curlers, accepted September 22, 1904. That patent is subject to the same defects as the preceding Klein patent and need not be fully discussed. It does not disclose the device of the patent in suit or its use, what it does disclose is a ring of wire, flattened and, as the patent says, "bent into the old hair pin shape, but my device has double instead of single prongs," and the patent describes the best way to use the waver would be to wind the hair around one of the double prongs, the ends of the same being threaded through the same prong which is then twisted to secure the hair, the other double prong being used to inclose or fasten the prong having the hair thereon. The structure of that patent is not the structure of the patent in suit and it does not function in the same way.

The disclosure of none of these patents is that of the patent in suit; the most that can be said is that in the French patent to Robin, the United States patent to Klein, and the British patent to Lenton, there are superficial, accidental, or incidental resemblances in the drawings to the device of the patent in suit, but neither of said patents contain any disclosures bearing on the issue before this court, nor are the incidental arrangements of the parts in the said drawings essential to the inventions of said patents nor adapted nor used to perform the function performed by the patent in suit nor do they contain any suggestion of the way in which the result sought by the patent in suit is accomplished.

This is not sufficient to show anticipation. A. R. Mosler & Co. v. Lurie (C.C. A.) 209 F. 364, 367; Canda v. Michigan Malleable Iron Co. (C.C.A.) 124 F. 486, 492; Atlantic Gulf & Pacific Co. v. Wood (C.C.A.) 288 F. 148, 155; Fulton Co. v. Bishop & Babcock Co. (C.C.A.) 284 F. 774; Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Munising Paper Co., Limited, v. American Sulphite Pulp Co. (C.C.A.) 228 F. 700; Fulton Co. v. Bishop & Babcock Co. (D.C.) 17 F.(2d) 999.

Defendant has not used any of the devices of the patents alleged to anticipate, but has used that of the patent in suit in Exhibit 1, thus showing what it thinks of that patent and the invention thereof.

None of the said patents anticipate.

Defendant also offered in evidence the following patents in addition to those offered to show anticipation for the purpose of showing noninvention over the prior art.

The patents to be considered show hair curlers and wavers and a brief discussion of them will be sufficient.

Patent No. 1,163,343 issued to Nettie Illoway, for hair curler, granted December 7, 1915, is asserted against claims 5, 8, and 9, but it shows no central hair-receiving slot and only one clasp. It is not a hair roller but is used instead of employing curling irons.

Patent No. 1,465,216 issued to Anna C. Heathcote, for hair curler, granted August 14, 1923, shows a curler, the side members of which are not connected together at both ends, but, the lock of hair 8 being placed between the diverging stem portions 9 and 10, the end portions 3 and 4 are manually grasped and twisted one about the other and the hair wound thereon and locked in place is left for a given time, ordinarily during sleeping hours.

British patent No. 21,419, A. D. 1895, issued to Harry Stinchcombe, for improved hair curler, accepted March 14, 1896, needs no extended discussion, as it is not pertinent for the same reasons as the Heathcote patent, supra.

Patent No. 1,558,523 issued to Augustus A. West, assignor to Magic Hair Curler Company, for hair curler, granted October 27, 1925, is a curler like Heathcote's, and what I have said about that patent applies to West. The West patent was cited as a reference by the Patent Office and the patent in suit issued over it.

Patent No. 1,643,226 issued to Irene Strabelle, for hair waver, granted September 20, 1927, shows a device that remains twisted at all times around which the hair is wrapped spirally in the usual manner. No further discussion is necessary.

Patent No. 1,530,854 issued to Louis Philip Putt, for hair curler, granted March 24, 1925, discloses a hair curler provided with pairs of freely movable clamping jaws 5, 6, 7, and 8 for gripping the hair. · As shown in Fig. 2, these jaws are used to clamp the lock of hair after it is wrapped about the twisted strands. The curler may be removed after a sufficient length of time.

Patent No. 1,511,743 issued to Milton D. Meserole, assignor to the Hayes-Meserole Manufacturing Company, Inc., for hair curler, granted October 14, 1924, discloses a three member hair curler secured at the center by a clip. The third member described as a tongue is "provided for primarily gripping the hair." That patent does not seem to me to have any bearing on this case.

Patent No. 1,627,469 issued to Emil Syptroth, assignor to Gustav Sattler, for means for fixing artificial hair dress on natural hair, granted May 3, 1927, discloses a spiral fastening device which is adapted solely for attaching a hank of false hair to the natural hair of the head.

A consideration of all of the patents offered by the defendant to show anticipation or the prior state of the art clearly shows that, while the invention of the patent in suit was a narrow one, it represented a real advance in the art, and the patents in evidence do not disclose devices which contain all of the desirable features of the hair former of the patent in suit nor did the disclosures of such patents teach the invention of the patent in suit, and we must not lose sight of the fact that, with all of that art to draw on, the defendant has rejected it in its entirety in Exhibit 1 and has appropriated bodily the construction of the patent in suit. This is persuasive on the question of invention. Diamond Rubber Company v. Consolidated Rubber Tire Company, 220 U.S. 428, 31 S. Ct. 444, 55 L.Ed. 527; General Electric Co. v. Wagner Electric Mfg. Co. (C.C.A.) 130 F. 772.

Simplicity is one of the attributes of the patent in suit, but should not blind us to its inventive character. Diamond Rubber Company v. Consolidated Rubber Tire Company, supra; Expanded Metal Company v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034; Barry v. Harpoon Castor Mfg. Co. (C.C.A.) 209 F. 207; General Electric Co. v. Hill-Wright Electric Co. (C.C.A.) 174 F. 996; General Electric Co. v. United States Electric Mfg. Co. (C.C.A.) 63 F.(2d) 764; Kurtz v. Belle Hat Lining Co., Inc., (C.C.A.) 280 F. 277.

The device of the patent in suit has utility, cheapness, and simplicity not possessed by the devices prior to the patent in suit.

The claims in suit of the patent in suit are valid.

This brings us to the question of infringement.

Claims 5 and 9 are alleged to be infringed by defendant's device Exhibit 1. These claims with the patent drawing numerals employed for identifying parts read as follows:

"Claim 5: A hair forming device comprising in combination,

"a. side members (4, Fig. 1.) of bendable metal covered with non-metallic material,

"b. held together by clamps (6) in spaced relation to provide an elongated slot (8) there between,

"c. and end portions (10) in the form of closed loops located outside of said clasps (6) to afford a stable support for grasp of the thumb and fingers whereby to ensure bending and shaping of the side members (4) under complete control of the operator for application to the hair."

"Claim 9: A hair dressing device,

"a. composed of a single piece of covered wire bent to form side members, (4)

"b. clasps (6) to secure said members together and at a distance from the end of the device

"c. to create closed loops (10) to afford a stable support for grasp of the thumb and fingers whereby to ensure bending and shaping of the side members under complete control of the operator for application to the hair."

These claims read directly on the defendant's device Exhibit 1, which is a slavish imitation of Fig. 1 of the patent in suit.

Exhibit 1 is made from a single piece of wire, the ends of which are secured together under one of the clips, therefore not only does claim 5 precisely define defendant's device Exhibit 1, but claim 9 also defines the defendant's device Exhibit 1, and particularly as made from "a single piece of covered wire bent to form side members."

Exhibit 1 infringes claims 5 and 9 of the patent in suit.

Claims 8 and 14 are alleged to be infringed by the defendant's devices 2, 3, and 4. These claims with the patent drawing numerals employed for identifying parts read as follows:

"Claim 14: A hair former consisting of

"a. a pair of substantially parallel side members (14, Fig. 2) of flexible material.

"b. and means (16) connecting the corresponding ends of the members together at their extremities to form a hair-receiving slot (18) there between, which may be any means such as the metal clips (16), or self means or links of the wire of which the side members are formed."

"Claim 8: A hair dressing device including

"a. a pair of hair-receiving members (14) composed of covered wire

"b. clasps (16) to hold said members together to create a slot (18) there between,

"c. and loops comprising the ends of the device, said loops being formed of substantially the same material and of the same size as said members to afford a stable support for grasp of the thumb and fingers whereby to ensure bending and shaping of the side members under complete control of the operator for application to the hair."

In claims 8 and 14 the loops are not termed closed loops as in claims 5 and 9, and properly so, because in claims 8 and 14 the loops are not completely and positively closed as by clips 6, but are only relatively closed against the ingress of hair at their inner ends because of the proximity of the wires 14, the side members, which as stated in claims 8 and 14 are "together."

Defendant contends that its hair formers like Exhibits 2, 3, and 4 do not come within the scope of claim 8, because they are comprised of single pieces of covered wire joined by a clip or a clasp and that there are no clasps used in the said defendant's hair formers such as are called for in such claim, and also that there are no end portions in the form of closed loops located outside of any clasps as are also specified in those claims.

Defendant also contends that its hair formers like Exhibits 2, 3 and 4 do not come within the scope of claim 14, in that said claim was intended to cover a hair former comprised of a pair of side members, and that the corresponding ends of these side members were intended to be connected together by clasps, such as the clasps 16 shown in Figure 2 of the patent, so that there is formed a hair-receiving slot between the side members, and that the specification clearly indicates that the claim was intended to cover a construction comprised of two pieces of bendable material having their corresponding ends connected together at their extremities.

Defendant further contends that, if claim 14 be construed to cover defendant's said devices, it is void for lack of novelty over the prior art patents to Hitzigrath No. 1,523,962, Putt No. 1,530,854, Klein No. 1,425,527, and the British patent No. 20,-439.

Defendant further contends that by reason of the rejection of claims as shown by the file wrapper plaintiff is estopped from having claim 14 construed to cover its said devices.

Claims 8 and 14 do not read upon the defendant's devices Exhibits 2, 3, and 4, for the reason that but one clasp 16 is employed by the defendant in said devices instead of two, the effect of which is to create a ring, which of course may be collapsed and used as it is by defendant, but that shows no novelty or invention over the prior art. As I have hereinbefore shown, the joining together of the side members at or adjacent their ends in parallel relation is an essential part of the invention of the patent in suit, and the patent in suit could not be distinguished from the prior art without it.

■ That defendant's said devices may be operated the same as the device of the patent in suit is not controlling.

There is no file wrapper estoppel.

■ It is true that original claims 1 to 7, inclusive, were canceled after formal rejection by the Examiner, and that claims 8 to 11 were canceled without having been considered by the Examiner, but, following the applicant's action in canceling said claims, new claims were inserted by amendment which became claims 5, 8, 9, and 14 of the patent as issued, and as allowed were as broad as those which had been canceled, and such cancellation does not sustain the estoppel claimed by the defendant. Westinghouse Electric & Mfg. Co. v. Condit Electrical Mfg. Co. (C.C.A.) 194 F. 427; Smith v. Snow, 294 U.S. 1, 55 S. Ct. 279, 79 L.Ed. 721; Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112; York Ice Machinery Corporation v. L. & K. Ice Corporation (D.C.) 6 F.Supp. 544.

The plaintiff in the sale of her hair former enjoyed some commercial success.

■■ The patent in suit is valid.

Claims 5 and 9 of the patent in suit are infringed by defendant's device Exhibit 1.

Claims 8 and 14 of the patent in suit are not infringed by defendant's devices Exhibits 2, 3, and 4.

A decree may be entered in favor of the plaintiff against the defendant with injunction and costs and the usual order of reference as to the infringement of claims 5 and 9 by defendant's device Exhibit 1, and in favor of the defendant against the plaintiff dismissing the bill of complaint as to the alleged infringement by the defendant's devices Exhibits 2, 3, and 4 without costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by rule 70½ of the Equity Rules (28 U.S.C.A. following section 723) and rule 11 of the Equity Rules of this court.