THYS CO. v. OESTE.

No. 6669.

United States District Court
N. D. California, N. D.
March 4, 1953.

Townsend, Townsend & Hoppe, San Francisco, Cal., for plaintiff.

White & White, San Francisco, Cal., for defendant.

LEMMON, District Judge.

Literally as well as figuratively, this case involves "a new twist". The central question presented is whether the use of a twist instead of a clip to join steel wire hop-picking fingers constitutes patentable invention.

The device in question traveled a rocky road through the Patent Office. The original application, filed on August 28, 1944, contained 14 claims. On November 15, 1944, the Examiner rejected all of them as being anticipated by various specified prior patents. By numerous amendments, tenaciously pressed upon the Patent Office, the plaintiff's assignor finally succeeded, after

four years of debate, in obtaining Patent No. 2,448,063, hereinafter referred to as the patent in suit, on August 31, 1948. Only four of the 23 allowed claims form the basis of the present infringement action.

After a study of the voluminous file wrapper, the Court is of the opinion that the patent was obtained—in part, at least—by progressively narrowing the claims so that they now resemble the achievement of the German specialist who kept on learning more and more about less and less, until at last he had learned everything about nothing at all!

### 1. The Complaint

It is alleged in the complaint, which was filed on June 6, 1952, that on or about July 1, 1946, the partnership of Thys and Miller, the assignee of Edouard Thys, the inventor, in turn, by mesne assignments, conveyed to the plaintiff the application that matured into the patent in suit. Since that date the plaintiff has been the owner of the letters patent.

Other allegations include:

The defendant has been infringing claims 18, 19, 21, and 22 of the patent.

The plaintiff has given sufficient notice to the public that the articles are patented, by fixing to the packages wherein one or more of them are enclosed a label containing the word "patent", together with the number of the patent, the character of the articles being such that the notice could not be fixed to the articles themselves.

Preliminary and final injunctions, an accounting of damages, a judgment for treble damages, etc., are demanded.

### 2. The Answer

On July 19, 1952, by stipulation of counsel, the defendant was allowed up to and including July 21, 1952, within which to plead to the complaint. On the latter date, she filed her answer, which consisted of two "defenses" and two "special defenses", respectively as follows:

1. The complaint fails to state a claim upon which relief can be granted.

2. Except for an admission that the patent was issued to Thys, all the allega-tions of the complaint are denied, either for want of knowledge or otherwise.

3. The patent is invalid for want of invention and because of its consisting in "mere aggregations of old elements". The alleged invention was known and used by others in this country prior to "the date of the supposed invention" of Thys. Long prior to the alleged invention, or more than one year prior to the date of the application that matured into the patent, the alleged invention "or all material and substantial parts thereof", had been patented and described in printed publications, and had been in public use and on sale in the United States "by persons and concerns other than the alleged inventor," etc. The purported inventions of the patent, particularly those of the four claims in suit, were devoid of "substantial novelty or invention" at the time of the application for the patent, in view of the state of the art, as shown by printed publications, prior patents, prior use, and prior knowledge. The patent describes devices at the disposal of any person skilled in the art, etc. The four claims are so limited by the prior art and by the admissions and actions of Thys during the prosecution of his patent application, and particularly by the limitations made therein under the requirements of the Commissioner of Patents, that the plaintiff is estopped from claiming a broader construction for such alleged inventions than the specific assembly of elements set forth in the claims.

4. The defendant acquired an unrestricted right to use the hop picking fingers purported to be embraced in the four claims, by reason of her purchase of the fingers from persons authorized by the patentee, etc.

### 3. The Citation of Prior Art

On September 10, 1952, the defendant filed a "Notice of Additional Defenses", in which were listed four domestic patents and one foreign patent "as evidence that the alleged invention described and claimed in the patent in suit had been patented or described in printed publications prior to the supposed invention" of Thys, etc.

On January 13, 1953 at the trial of the cause the defendant filed a book of exhibits containing copies of many domestic patents. The five patents listed in the "Notice of Additional Defenses", supra, were introduced in evidence by the plaintiff.

Numerous other papers were filed by both parties. Because of the Court's view of the case, they need not be listed here.

4. *The Four Claims in Suit*

The claims of the patent that the plaintiff asserts have been infringed are set out in the margin.[1] It will be observed that each of the four claims specifies, in identical language, "a partial encirclement of a finger by an adjacent finger and in which partial encirclement neither of two adjacent fingers pass (sic) completely around the other."

In the oral argument, counsel for the plaintiff suggested:

" * * * as a very minimum what the inventor has done is he has put these *crimps* in the fingers so that if you hold two fingers side by side * * * you will find that whichever one of the two fingers we push back they are mutually supported. * * *

"So *twists* were quite well known. But I think that the remarkable thing, viewing this objectively, is that although this finger was known in 1913 and twists were known in 1880 or 1910, * * * it still took a period of over 25 or 30 years for somebody to get in

---

1. "18. A picking finger having a substantially V-shaped picking portion and wherein the sides of the V are extended to form substantially parallel leg portions, said leg portions provided with means to anchor said finger to a finger bar, *each of said legs at the point of juncture with the sides of the V having complementary bends extending out of the plane common to the main length of the legs whereby each leg may be coupled to similar adjacent legs by hooking them together*, the major portion of the length of both of said legs lying in the same plane, *said complementary bends including a partial encirclement of a finger by an adjacent finger and in which partial encirclement neither of two adjacent fingers pass* (sic) *completely around the other*.

"19. A wire picking finger having a substantially V-shaped picking portion and wherein the sides of the V are extended to form substantially parallel leg portions, each of said leg portions provided with means to anchor said finger to a finger bar, said means comprising hollow coils adapted for slidable reception of a finger bar, and each of said coils terminating in a straight portion, *each of said legs at the point of juncture with the sides of the V having complementary bends extending out of the plane common to the main length of the legs whereby each leg may be coupled to similar adjacent legs by hooking them together*, the major portion of the length of both of said legs lying in the same plane, *said complementary bends including a partial encirclement of a finger by an adjacent finger and in which partial encirclement*

*neither of two adjacent fingers pass* (sic) *completely around the other.*

"21. A picking finger having a substantially V-shaped picking portion wherein the sides of the V are extended to form substantially parallel leg portions, said leg portions being provided with means to anchor said finger to a finger supporting bar, the major portion of the length of each leg being straight and *each of said legs at the point of juncture at the sides of the V having bends extending in opposite directions* and out of the line of the length of the leg, whereby the fingers may be interlocked so as to mutually support one another and be slidably disengageable with respect to one another, *the said bends of adjacent fingers including a partial encirclement of a finger by an adjacent finger and in which partial encirclement neither of two adjacent fingers pass* (sic) *completely around the other.*

"22. A picking finger having a substantially V-shaped picking portion and wherein the sides of the V are extended to form leg portions spaced from each other and extending in the same direction, and each leg portion being provided with means to anchor said finger to a finger supporting bar, *each of said legs at the point of juncture with the sides of the V having complementary bends extending out of line* from the line of the leg whereby each leg may be coupled to adjacent legs by hooking them together, *said complementary bends of adjacent fingers including a partial encirclement of a finger by an adjacent finger and in which partial encirclement neither of two adjacent fingers pass* (sic) *completely around the other.*" (Emphasis supplied.)

his head the idea that by putting *complementary bends* in the top of the finger * * * they would be self-supporting, that they would be easily removable one from the other, in that you would avoid having to put these various *clips* on the top of the fingers.

\* \* \* \* \* \*

"Now, let us assume, if we may, that *the invention resided merely in the idea of eliminating that clip*. Sound authority that that is invention, because we still have the function of the clip, the clip being to keep the two fingers together, where you eliminate a structure, a device, and retain its function, the courts have been consistent in saying that that is invention." (Emphasis supplied.)

Quite aside from counsel's views, however, after a careful consideration of the testimony and the exhibits the Court is convinced that the nearest approach to invention in the patent resides in its teaching of interlocking picking fingers, the "bends of adjacent fingers including a partial encirclement of a finger by an adjacent finger," etc.

Whether this "partial encirclement" holds patentable invention in its embrace is the crucial question presented in this case.

### 5. *"The Swing of the Pendulum"*

During the oral argument, counsel for the plaintiff discoursed at some length upon "the swing of the pendulum" from strictness to liberality in the construction of patents.

This entire subject is fully covered in this Court's opinion in the related case of Thys Company v. Oeste, No. 6435, 111 F. Supp. 665, and hereinafter referred to as No. 6435. In that case, there was a detailed discussion of the impact of the new Patent Code and of the Supreme Court's opinion in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. That discussion is applicable here.

### 6. *The Prior Art*

The Court will accept the plaintiff's assumption "that the invention resided mere-ly in the idea of eliminating that clip", supra. That elimination has been effected in at least one prior patent.

*(a) Trowbridge, No. 968,001, August 23, 1910*

That patent was for a machine for picking hops. Figure 5 shows "an alternative construction of stripping-device", and "illustrates a slight modification of the top-stripper f' in which it is formed of *twisted wire*, instead of sheet-metal." (Emphasis supplied.) Counsel for the plaintiff concedes that in the Trowbridge disclosure, there are "two legs of a picking finger twisted together to give it rigidity".

In the File Wrapper for the patent in suit, we find the following comment by the Patent Office itself:

"Claim 15 is rejected on the British patent to Gray, as stated in the rejection of claim 14, taken with patent to Trowbridge, *Figure 5*, it being held the feature of *interlocking the picking fingers* in the British reference device would not involve invention *in view of the Trowbridge disclosure*." (Emphasis supplied.)

As has been shown, each of the four claims in suit teaches bends of the legs of the picker fingers, the bends—

"including a partial encirclement of a *finger* by an adjacent *finger* and in which partial encirclement neither of two adjacent *fingers* pass (sic) completely around the other." (Emphasis supplied.)

J. E. Trabucco, who has been practicing as a registered patent attorney for thirty years, during which time he has appeared as an advocate in something like "fifty-odd" patent cases was called as an expert witness for the defendant. He testified that in Trowbridge the *legs* are shown "extending around one another". He pointed out, incidentally, that he did not think that "you could make a finger in accordance with that particular specification (of the patent in suit)", adding:

"I don't see how you could have a finger extending partially around another finger. You could have a *leg* of a finger extending around an ad-

jacent *leg* of another finger, but you can't have a *finger,* an *entire finger,* extending around another finger. So in that respect I would say that the claim would be inoperative." (Emphasis supplied.)

Mr. Trabucco observed that the plaintiff's "precise construction" was not shown in Trowbridge, since in the plaintiff's patent "the legs extend partially around one another, but in Trowbridge * * * you do see the legs extending around one another." Nevertheless, according to the expert, Fig. 5 of the Trowbridge device does show complementary bends (in the legs) at the point of the juncture of the sides of the V. It should be noted that *each* of the four claims in suit teaches that "each of said legs at the point of juncture with the sides of the V" has bends.

A careful study of Mr. Trabucco's testimony has convinced the Court that his comparison of the claims in suit with the prior art is both sound and trustworthy. The plaintiff's efforts to brush aside Mr. Trabucco's conclusions as "merely argument" of a "paid expert" are not impressive.

*(b) Rivard, No. 2,428,321, September 30, 1947*

Even closer to the plaintiff's disclosure, however, is the teaching of Rivard. The latter provides that "By interlacing or interengaging the fingers, load stress on a single finger is eliminated". Figs. 1 and 2 of Rivard clearly show a double twist of adjoining fingers. It is true that Thys teaches only a *single* twist in those fingers. But though it is important in wrestling, it might be argued that the difference between a half Nelson and a full Nelson does not constitute patentable novelty!

█ It is possible that Thys and Rivard teach the same thing. Be that as it may, this Court cannot consider Rivard as prior art. Though the Thys patent was issued on August 31, 1948, exactly 11 months after Rivard received his patent, Thys filed his application on August 28, 1944, several months prior to the time that Rivard filed his application; namely, on January 8, 1945.

At the trial, the Court ruled that all testimony relating to the Rivard patent, as well as the patent itself, would be stricken from the record; but the Court announced that it would allow counsel for the defendant to write a letter to the Court in an effort to obtain a reconsideration of the ruling.

In his letter as well as in oral argument, counsel has asserted that "the Rivard patent is *not* cited by the defendant for the purpose of invalidating the patent in suit, but is cited as a part of the state of the art to show that in construing the claims of Thys 'the surrounding pressure of the art serves to restrict the effective range of the patent to the four corners of its claims' ".

Since this Court is not merely "restricting the effective range" of the Thys patent but is declaring the entire patent invalid, the question raised by counsel for the defendant is moot. The greater includes the lesser.

The same situation prevails and the same ruling was made with regard to Bloom, No. 2,432,653, applied for on September 16, 1944, or three weeks after the filing of Thys's application, but issued on December 16, 1947, or more than eight months before the patent in suit was issued.

As to both the Rivard and the Bloom patent, the Court adheres to its original ruling. Both letters patent and all testimony relating thereto are stricken from the record.

## 7. The Law of the Case

The incidence of the principles of integration, commercial success, the application of the A. & P. Co. case, supra, and other cognate legal questions are fully discussed in this Court's opinion in No. 6435, supra. It would serve no useful purpose to labor these matters further.

A final observation, however, might appropriately be added. Counsel has told the Court that the plaintiff relies, on the question of validity, not only upon "a change in philosophy, but also under the old-fashioned philosophy".

Let us see precisely what that "old-fashioned philosophy" was. In Atlantic

Works v. Brady, 1883, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438, Mr. Justice Bradley said:

> "The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

From this it can be seen that the present norms of patentable invention are not different from those of threescore and ten years ago.

Whether we characterize the plaintiff's half-Nelson twist by employing Mr. Justice Bradley's stately idiom and terming it a "trifling device", or whether we adopt Mr. Justice Douglas's breezy colloquialism in the A. & P. Co. case and label it a "gadget", the net result is the same; this Court declines to recognize the device in suit as a patentable invention.

### 8. Conclusion

■ The patent in suit is invalid for want of invention.

Findings of fact and conclusions of law consistent with the foregoing are to be served and lodged by the defendant.