## WESTINGHOUSE ELECTRIC & MFG. CO. v. CONDIT ELECTRICAL MFG. CO.

(Circuit Court of Appeals, Second Circuit. December 11, 1911.)

No. 68.

1. PATENTS (§ 328*)—INVENTION—ELECTRIC SWITCH.
    The Wright & Aalborg patent, No. 633,771, for a switch for electric circuits, is void for lack of invention.

2. PATENTS (§ 160*)—CONSTRUCTION—PROCEEDINGS IN PATENT OFFICE.
    As a general rule, and unless limitations are imposed by acquiescence in the rejection of broader claims than those allowed the interpretation to be placed on the claims of a patent is to be determined by the language of the grant, and the proceedings of the Patent Office are immaterial.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 234, 235; Dec. Dig. § 160.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Westinghouse Electric & Manufacturing Company against the Condit Electrical Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

Appeal from a decree of the Circuit Court, Southern District of New York, in a suit to restrain the alleged infringement of letters patent No. 633,771

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

issued September 26, to the complainant as assignee of Gilbert Wright and Christian Aalborg for an improvement in switches for electric circuits.

The patent in suit is a separate patent for switch mechanism. The companion patent No. 633,772, granted at the same time to the same.inventors, is for an automatic circuit breaker containing switch mechanism and was sustained by this court in another suit between these same parties, our decision being reported in 167 Fed. 546, 93 C. C. A. 224. The circuit breaker patent was also sustained by the Circuit Court of Appeals for the Third Circuit in cases reported in 143 Fed. 966, 75 C. C. A. 152, and 169 Fed. 634, 95 C. C. A. 162.

The patentees in the present patent thus state the object of their alleged invention:

"Our invention relates to switches for electric circuits; and it has for its object to provide a switch of such construction that its movable contact member may be readily brought into operative position, locked in such position, and released and separated from its stationary member by an expenditure of power that shall be substantially independent of the current-carrying capacity of the switch and much less than that exercised in opening and closing switches of the types heretofore employed.

"Manually-operated switches heretofore in use have generally been of knife-blade and jaw construction, the structures being variously modified in order to increase the current-carrying capacity and facilitate the opening and closing of those of large size. The opening and closing of knife-and-jaw switches having large current-carrying capacity can be effected, however, only by the application of a considerable amount of power by reason of the fact that the jaws must contain so much material that they will yield to only a very limited degree. We are enabled by our invention to entirely dispense with gripping engagement between the contact-terminals of the switch, and thereby obviate deterioriation by reason of frictional wear."

The first and second claims which are in issue, read as follows:

"1. A switch for electric circuits comprising stationary terminals having contact blocks or plates the contact-faces of which are in substantially the same plane, a supporting-base therefor, a laminated member having beveled ends for engagement with the faces of said terminals, a supporting-arm pivoted at one end to the base and attached to the laminated member at substantially the middle point of the latter and at a considerable distance from the axis of movement of said arm, and an actuating-lever pivoted to the base and having a movable connection with the supporting-arm."

"2. In a switch for electric circuits, the combination with a base having stationary contact-terminals, of a laminated contact member having beveled ends adapted to engage the plane faces of said contact-terminals, a supporting-arm pivoted at one end to the base and attached to the laminated member at substantially the middle point of said member, and an actuating-lever having operative connections with the base and with the supporting-arm for the laminated member."

The defenses are:

(1) That the claims are invalid;

(2) That the defendant's device does not infringe.

The Circuit Court after hearing the cause dismissed the bill and the complainant has appealed. The decision of the Circuit Court is reported in 194 Fed. 430.

Kerr, Page, Cooper & Hayward (Thomas B. Kerr and John C. Kerr, of counsel), for appellant.

Edwards, Sager & Wooster (Clifton V. Edwards, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). [1] Our decision in the circuit breaker patent case has little application here. We regarded the question of invention in that case as doubtful but resolved it in favor of the patentees by reason of especial advantages in

the structure, none of which, except perhaps the form, had any reference to the switch element. Besides we think that the claims of this patent cover something more than the switch of the other. This case also differs from that in that there it appeared that the circuit breaker had gone into extensive use, while it is not shown that this switch has had any substantial use. It seems to have failed entirely to supplant the old knife-blade switch.

The primary question then is whether invention is to be found in the present claims of which we may take claim 1 as typical, the elements being:

(a) Stationary terminals with contact faces in substantially the same line and with a supporting base;

(b) A laminated member having beveled ends for engagement with the faces of the terminals;

(c) A supporting arm pivoted at one end to the base and attached to the laminated member at substantially the middle part of the latter and at a considerable distance from the axis of movement of said arms:

(d) An actuating lever pivoted to the base and having a movable connection with the supporting arm.

The advantages of this construction urged by the complainant in its brief may thus be summarized:

(1) It is said that by the adoption of the beveled laminated contact member perfect contact is obtained and the binding friction of the old switches obviated. Indeed as shown by the specification this seems to have been regarded by the patentees themselves as the principal change from the prior art. It is also pointed out in the brief that the scraping action of the laminae keeps the surfaces bright and secures good contact.

(2) It is contended that by mounting the movable contact upon a swinging arm a wide break is secured to interrupt the arc.

(3) It is also urged that the movement of the swinging arm is such that a minimum of lateral space is required.

Much stress is placed upon the presence and action of a toggle lever, but we find no reference to that form of construction in the claims in issue nor do we think the presence of such a lever necessarily to be read into the claims by reason of anything in the drawings or specification. Indeed one of the drawings shows a form of connection other than a toggle lever.

Now, the record shows clearly that at the date of this alleged invention, the use of a laminated contact member with beveled ends was old in the art of electrical switches. The departure from the gripping engagement of the old knife-contact and the substitution therefor of face to face contacts, are shown by several patents older than this one. So pivoted supporting arms, actuating levers and various forms of connections for bringing the movable member into contact with the stationary members and for breaking the arc are shown in earlier patents. It is unnecessary to seek precise anticipations. It is sufficient to say that with the structures in the prior art shown by the record, we think that mechanical skill was quite sufficient to obtain any advantages disclosed by the patent. In our opinion, the elements of the claims considered separately are old, and we find nothing in their combination disclosing invention.

[2] We have reached the conclusion of invalidity without referring to the proceedings in the Patent Office because we fail to see that those proceedings have any bearing upon the questions arising in this case. Sometimes such proceedings are of importance, especially where a matter of estoppel is involved. Thus a patentee who, in order to avoid a rejection of his application, inserts limitations in his claims is estopped from contending that the patent as issued should be construed as if such limitations had not been made. But, as a general rule, the interpretation to be placed upon the claims and specification of a patent is to be determined from the language of the grant, and the proceedings in the Patent Office are quite immaterial. Such is the situation in the present case. Original claims were rejected in the Patent Office. Thereupon the applicants, instead of limiting their claims, substituted broader ones which were accepted. Presumably the examiner changed his mind. But whatever be the explanation of his position, nothing whatever is shown to work an estoppel against the patentees. Instead of surrendering something which they now claim to obtain that which was allowed, they claimed something more and got it.

The decree of the Circuit Court is affirmed with costs.