A. G. SPALDING & BROS. v. JOHN WANAMAKER, NEW YORK.

SAME v. SUCCESSORS OF SAMUEL BUCKLEY & CO. OF LONDON AND NEW YORK.

(Circuit Court of Appeals, Second Circuit. February 13, 1919.)

Nos. 163, 164.

1. PATENTS ⟨⟩328—INFRINGEMENT—GOLF BALLS.
    The Taylor patent, No. 878,254, for a golf ball pitted with substantially circular cavities, with steep sides at the peripheries only of said cavities, is not infringed by a golf ball having cavities similar in shape and size, but whose sides make angles of 35 degrees with the surface.

2. PATENTS ⟨⟩168(2)—CONSTRUCTION—REJECTION OF CLAIM.
    Where a claim broad enough to include defendant's article was several times rejected by the Patent Office, the patentee is thereby precluded from asserting that the claims allowed should be given the same meaning as the rejected claim.

3. PATENTS ⟨⟩160—CONSTRUCTION—EXAMINATION OF FILE WRAPPER.
    The court examines the file wrapper of a patent only to determine the question of estoppel through rejected claims, and cannot consider the arguments of the applicant and the examiner.

In Error to the District Court of the United States for the Southern District of New York.

Separate suits by A. G. Spalding & Bros. against John Wanamaker, New York, and against the Successors of Samuel Buckley & Co. of London and New York, for infringement of patent. Decrees for the defendant in each suit, and plaintiffs appeal. Affirmed.

These are appeals from decrees of the District Court for the Southern District of New York (Hough, J., presiding), dismissing the bills, with costs. The suits were based upon claims 1, 2, 4, and 5 of Patent No. 878,254, issued on February 4, 1908, to William Taylor of Leicester, England. In each case the plaintiff sues as assignee of Taylor, and some question was made upon the hearing of the sufficiency of the evidence of assignment; but this matter is not considered in the following opinion.

The patent recites that the invention relates to golf balls, and has for its principal object to improve the flight of the ball by giving it "a sustained hanging flight" with "a flat trajectory with a slight rising tendency particularly towards the end of the flight" (page 1, lines 12–15). It acknowledges that in the past it was common to mark the surface of golf balls with grooves of even width, intersecting each other and leaving between them isolated polygonal portions; that another common marking consisted of separate prominences upon the surface, resembling the surface of a blackberry, and named for this reason the "bramble" pattern. The patent then proceeds as follows (page 1, lines 30–47):

"The character of the marking which constitutes the present invention may be described in general terms as an inverted bramble pattern, and consists of isolated cavities the essential features of which are that they must be substantially circular in plan and substantially evenly distributed. They must be shallow, and their sides, particularly at the lip of the cavity, must be steep. Steepness of the cavity walls is essential to the hanging flight, but excessive depth besides promoting the collection of dirt, is detrimental to length of flight by offering great resistance to the passage of the air. Consequently the cavity

must be shallow and the steepness of its walls confined to the immediate neighborhood of the lip."

Detailed drawings set forth sections of the proposed pits, and the specification states the limits of their proper diameter and that in no case should the depth exceed one-eighth of that diameter. Several forms of section are shown, all with steep sides at the lips of the cavity; the pits differ in section, in some cases being flat at the bottom, in some elliptical, and in some the spherical surface of the ball proper, adjacent to the lip, slopes inwardly toward the lip. This last feature is not in issue in the suit at bar.

The claims in issue are as follows:

"1. A golf ball with spherical surface pitted with isolated cavities of large surface area relatively to their depth, substantially circular in plan, with steep sides at the peripheries only of said cavities, and a depth not exceeding one-eighth of their diameter.

"2. A golf ball with spherical surface pitted with isolated cavities of large surface area relatively to their depth, substantially circular in plan, with steep sides at the peripheries only of said cavities, and dished or concave bottoms. and of a depth not exceeding one-eighth of their diameter"

"4. A golf ball with spherical surface pitted with isolated cavities of large surface area relatively to their depth, substantially circular in plan, with steep sides at the peripheries only of said cavities, and of a diameter not less than nine-hundredths nor greater than fifteen-hundredths of an inch, and of a depth not exceeding fourteen-thousandths of an inch.

"5. A golf ball with spherical surface pitted with isolated cavities with large surface area relatively to their depth, substantially circular in plan with steep sides at the peripheries only of said cavities, and dished or concave bottoms, and of a diameter not less than nine-hundredths nor greater than fifteen-hundredths of an inch, and of a depth not exceeding fourteen-thousandths of an inch."

The defendants made balls pitted with spherical cavities similar in proportion and size to the plaintiff's. The issue in the case was whether these conformed to the words, "with steep sides at the peripheries only of said cavities," which are contained in all the claims in suit. The section of the defendants' pits was the arc of a circle, and the angle subtended varied between 28 degrees for the defendant Wanamaker's ball, and 35 degrees for the defendant Buckley's. The tangents to the curve of the pit at the lip were therefore, in the first case, of 152 degrees, and, in the second, of 145 degrees. The District Court found that pits of this character did not answer the element of the claims above mentioned and dismissed the bills for noninfringement.

William A. Redding, of New York City, for appellants.

Samuel Owen Edmonds, of New York City, for appellee John Wanamaker, New York.

W. Hastings Swenarton, of New York City, for appellee Successors of Samuel Buckley & Co., of London and New York.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] We think this case turns upon the question of infringement, as did the District Judge, and we have no disposition to question the validity of the patent giving it any scope which the reasonable intent of the claims can carry. We therefore consider simply the meaning of that language, present in all the claims, "with steep sides at the peripheries only of said cavities." As to this the parties differ—the defendants in-

sisting that it positively requires steep sides; the plaintiff, that it need mean no more than that the relatively steepest part of the sides must be at the lips, or, as the Patent Office phrased it, "peripheries." If the plaintiff's contention be correct, any angle between the tangents at the lips would answer the claims provided it were less than any angle between similar tangents drawn elsewhere. It would follow that the claim only meant that the pit should not be made up of two convex sections. In short, the expression would mean no more than that the pit must be concave in section.

Now it is perfectly clear that the patent did not mean this at all. The patentee supposed that he had discovered an invention dependent upon the two elements: First, that the pit should have steep sides; and, second, that it should be shallow. About the first he is explicit, for he says (page 1, lines 39–41), "Steepness of the cavity walls is essential to the hanging flight," and the hanging flight was one of the objects of his invention. That he meant not merely that the steepest part of the sides should be at the lips, as the plaintiff asserts, is clear from what immediately follows the quotation just given. He had asserted that it was steepness, and not the position of that steepness, which was essential to his patent, and he proceeded to consider the necessary limitation of this element of his invention. If the sides were steep, it followed that the pits must be deep unless their angle changed. But excessive depth would collect dirt and would shorten the flight. How, then, should he accommodate the two requirements? He furnishes the answer, saying, "Consequently the cavity must be shallow and the steepness of its·wall confined to the immediate neighborhood of the lip." Now all this was not merely a roundabout way of saying that the pit must be concave. He could have said that much more simply, and it would indeed have necessarily followed from the general description of the patent as an inverted "bramble." And so, when he used the phrase (page 1, lines 38–39), "their sides, particularly at the lip of the cavity, must be steep," he meant what he said; that is, "steep," as distinct from "sloping."

We do not think it necessary to confine the patent to the angle of 90 degrees between the tangents at the lips, as is stated in the specification (page 1, lines 61–62), although it would be a somewhat strained interpretation which treated an angle of more than 90 degrees as· "steep." If any one thinks that an angle of more than 90 degrees left the sides steep, it may be so. Certainly angles of 152 and 145 degrees by no reasonable extension of the words fall within the adjective selected. The patent has already been once declared void for indefiniteness, and too much latitude would, under our own law, as well as under the English law, make the disclosure insufficient, because it would be incapable of serving as a guide in manufacture. But the question of indefiniteness we pass, assuming for present purposes that the adjective "steep" is sufficient for practical manufacture. All we need say here is that, however vague may be the contrast between "steep" and "sloping," it is clearly indicated, and that the defendant's balls in any view are only sloping.

The fact is that the patentee misconceived his invention. He supposed that something akin to a ledge was necessary to produce the flight he was after. The proof is to the contrary. A shallow saucer, the sector of a circle of small angle, produces quite as good results as the patented ball. The patentee having misconceived the conditions of what he wished, the plaintiff hopes now to appropriate a broader invention discovered by another and resting upon the elimination of one of the elements which the patentee supposed necessary. Obviously this he cannot do.

We cannot, therefore, agree that there is any ambiguity in the claims of the patent, and we should be content to rest there, if necessary; but an inspection of the file wrapper corroborates the conclusion which we have reached. On October 10, 1906, the applicant proposed a new claim—claim 2 of that date—in the following words:

"A golf ball with spherical surface pitted with isolated cavities of a diameter not less than nine one-hundredths nor greater than fifteen one-hundredths of an inch and of a depth not exceeding fourteen one-thousandths of an inch."

Now this claim proposed an extension of the patent of precisely the scope which is necessary to cover defendant's balls and without which the claim does not cover them. It eliminated the question of steep sides, and yet it was obviously intended to cover a cavity which was concave in section; that is to say, one in which the steepest part of the section was at the lips. The plaintiff does not assent to this interpretation of the proposed claim. Its reason is that the patent to Fernie, on which this claim was rejected on October 31, 1906, and again on December 17, 1906, and February 19, 1907, covered pits which in section exhibited two convex curves, meeting in a deep point in which mud would gather. It may be that one might follow Fernie's patent and make a ball with such cavities, but it is quite clear that, read on those specifications, the pit must have been concave in section. This follows from that part of the specification (page 1, lines 32–33) which described in general terms the patentee's balls as pitted with inverted "brambles." Now whatever else "inverted brambles" means, it only covers pits concave in section, and the proposed claim would have been read in that sense. It seems to us necessarily to follow that the proposed claim would have covered only such a pit, and that therefore, while it proposed a claim of greater latitude than those eventually granted, it could not have been construed as covering a pit such as the applicant insisted might follow within Fernie's practice.

[2, 3] Therefore the successive rejections of this claim necessarily involved the rejection of the construction which the plaintiff seeks to put upon the patent at the present time—or at least, so it seems to us—and concludes it by estoppel from the interpretation which it now seeks to put upon those claims which the patentee eventually got. We take this occasion, however, once more to say that in the consideration of a file wrapper we do not look at the arguments of the applicant to the examiner. We wish it to be understood that, as we conceive the purpose for which the file wrapper can be examined, it covers simply the question of estoppels through rejected claims. The whole doctrine is

somewhat anomalous at best, since it involves looking at preliminary negotiations in the interpretation of a formal document intended to be the final memorial of the parties' intentions. The practice, however, is too well settled for us to disturb, and we have no intention of casting any doubt upon it. This court, nevertheless, has twice already disapproved the practice of bringing into that interpretation the arguments of an applicant. Westinghouse Electric Co. v. Condit Elec. Mfg. Co., 194 Fed. 427, 430, 114 C. C. A. 389; Auto Pneumatic Action Co. v. Kindler & Collins, 247 Fed. 323, 328, 159 C. C. A. 417. We repeat now that disapproval.

Finally, we agree with the plaintiff that the use by Jack White in England of balls similar to the defendants' is not material to the disposition of this case, in the absence of proof that Taylor, the patentee, knew of the use before his invention. As a prior use it has no relevancy to the validity of an American patent. The issue of whether Taylor was in fact a prior inventor it is not necessary for us to consider.

The decrees are affirmed, with costs, and the bills dismissed for noninfringement.