### CAMPBELL METAL WINDOW CORPORATION v. S. H. POMEROY & CO., Inc.

(District Court, S. D. New York. June 30, 1924.)

1. **Patents ⬄168(1)—Construction not affected by correspondence with Patent Office.**

   The claims of a patent cannot be enlarged, limited, or varied by what is said in correspondence between the applicant and Examiner in the Patent Office proceedings and before the claims were allowed.

2. **Patents ⬄155—Disclaimer may remove other limitations of claim.**

   A disclaimer changes the meaning of a claim, and results in effect in allowing another and more limited one than that originally granted, and its more limited scope in one part may remove necessary restrictions elsewhere.

---

⬄For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Patents ⊕⇒328—1,222,358 and 1,241,090, for improvem'ents in metal windows, held valid and infringed.
 The Campbell patents, Nos. 1,222,358 and 1,241,090, for improvements in metal windows, *held* valid and infringed.

In Equity. Suit by the Campbell Metal Window Corporation against S. H. Pomeroy & Co., Inc. Decree for complainant.

Charles Neave and Alan N. Mann, both of New York City, for plaintiff.

William B. Greeley and William A. Redding, both of New York City, for defendant.

LEARNED HAND, District Judge. Verbally all the claims in suit cover the defendant's type A window, which is the only form here challenged. There is, therefore, no need to invoke that doctrine, peculiar to the law of patents, by which the language of a formal written instrument is not taken as the limit of its scope, when the result would be to defeat the obvious purpose of the grant. The defendant, however, seeks to limit the generality of the words used by interpreting them upon the disclosure of the drawings and text, invoking in this respect an entirely legitimate canon of construction. The question which arises is, therefore, the familiar one of how far the disclosure may justly be generalized and the functional relation of the elements may be taken more abstractly than they are actually presented—how far, in short, the invention must be compressed within the literal limits of the illustrations set forth.

In the earlier patent the specifications throughout describe a structure in which the plate attached to the sash is in contact with the rear wall of the jamb, and the capacious air spaces into which the leaks of air pass are those in which the counterweights move up and down. There is no suggestion of any more limited spaces, and the defendant insists that the claims must be confined to the disclosure. If so, the result is that the second patent is not a species of the first, or, as its specifications describe it, an improvement. I can see no reason for such a limitation. The purposes of the original patent are all realized, though the sash plate abuts upon a plate intermediate between the outer and inner face of the jamb. True, this reduces the cubic capacity of the air space, but it does not eliminate it, and, if experience proved that in practice a smaller space would serve, the invention was realized quite as much as though the disclosure has been literally followed.

[1] In the Patent Office the applicant's solicitor in a brief distinguished Ruth's patent because his own disclosure passed through the metal of the jamb, the edge of the jamb not being formed by bending in the inner face. The dissenting opinion of the Examiner in Chief appears to have adopted the distinction, and this was the basis of the eventual allowance. But I cannot agree that the reasons given by either Examiner or applicant are to be incorporated by reference into the claims. Nor do I think that any such result follows from Goodyear, etc., Co. v. Davis, 102 U. S. 222, 26 L. Ed. 149. The court had there before it a claim which had been limited to hard rubber, and in

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

confirmation of the natural meaning of the words did indeed notice certain corroborating language used by the applicant in the Patent Office proceedings. Mr. Justice Strong expressly added that such language could not "enlarge, diminish, or vary" the patent. I do not understand that this case meant to require me to go through all that was said in the endless communications between applicant and Examiners to gather piecemeal the intent of the grant, as though I were construing a correspondence. If so, what is the purpose of the final formal instrument? The reference of the court to such confirmation of an otherwise clear meaning is not to be taken as establishing a general rule. In any event, it is well settled by authorities binding upon me that in this circuit we do not look to such exterior expression of intent, but treat a patent as we should a will, a deed, or any other instrument intended to be a final memorial of the parties' intention. Westinghouse Elec. Co. v. Condit Elect. Co. (C. C. A. 2) 194 Fed. 427, 430, 114 C. C. A. 389; Auto Pneumatic Action Co. v. Kindley & Collins, 247 Fed. 323, 328, 159 C. C. A. 417; Spaulding & Bros. v. Wanamaker (C. C. A. 2) 256 Fed. 530, 533, 534, 167 C. C. A. 602.

[2] However this may be, the claims in any event took on a different meaning after the disclaimer. Without the added element that the sash plate shall touch a rear plate, it may be true that they could not be valid in the face of Keighley, unless it reached into the main space where the counterweight moved. When, however, the disclaimer added that element, I see no inconsistency in allowing to the words their natural meaning, even though it be a different one from that which they must have had before. A disclaimer may change the meaning of the claim (Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 436, 22 Sup. Ct. 698, 46 L. Ed. 968), and result in effect in allowing another one than that originally granted. Indeed, it must be so in the sense that, where before it had an extended scope, later it has a restricted one. Why may not the formal restriction of the new and express element release the language from any limitations which formerly had to exist, if it was to be valid at all? If one chooses to say so, the whole claim is changed, not, to be sure, by express modification, but because its more limited scope in one part removed the necessary restrictions elsewhere. That is indeed to make over the claim in substance, though not in words, yet so long as this plasticity remains within the limits of the express language used, I do not understand that it is forbidden by the law. We constantly mold the scope of claims by the prior art, and trouble arises only when the strain upon their form causes them to break altogether. There is, indeed, some casuistry in this; but it is a beneficent casuistry.

[3] So much, therefore, for the meaning of the phrase "a vertical opening extending through said inner wall," or "in said inner wall." The other objection is that the air spaces in type A are so small that they cannot be treated as covered by those of Campbell's patents. The area of these air spaces in section is important only as it affects the function of reducing the pressure of the entering draft of air, which varies with that area. It is clear that, if the space be as small as, for example, in Campbell's second patent, it still operates in the same way,

and, it may be, quite efficiently enough. In the defendant's type A window the spaces are still further reduced, and with them the function, but it is not destroyed; the width of the opening through which the air must enter is still small compared with the width of the space, and the air will expand very substantially, as it will not do at all if it is carried about in a channel of constant width. Functionally the operation remains the same in kind, not in degree. Therefore I see no reason why the language of the claims should not have its natural extent.

As respects both these questions, the second patent, which is later, is not open to criticism. In view of this, perhaps, I have devoted too much attention to the first. Thus the case comes down to validity. Edge contact of the jamb with the sash plate was old. Ruth, Keighley, and Winslow's prior use. Edge contact, coupled with contact at the end of the sash plate against a rear plate in the jamb, whether that was the outer side of the jamb or an intermediate plate, was new, except for Winslow's prior use, of which I shall speak in a moment. In so saying, I do not count Winslow's patent, which has a spring, $E$, for that purpose. In any event, it was agreed that this was not an anticipation since there was no air space, the lip, $c^5$, acting as a "perfect weather and water lip." The first question is whether the combination of the two contacts was invention. I think so. There had been many efforts to make a satisfactory metal window, and Campbell's was the most successful. Why Keighley did not extend his sash plate further does not appear. Apparently he thought it dangerous to run the risk of so much friction within the channel, because he provided an extra member, $e$, to limit transverse motion of the window, just as Ruth did with his wheel, $12$. The difficulty had, of course, been recognized all along, and the several efforts at solution are evidence enough that Campbell's way was not the obvious single method.

There remains only Winslow's prior use. Had it not been for the felt, I should think this an anticipation, just as I should so hold as respects Keighley, had he carried his sash plate to a contact with the plate within the jamb. But the felt is a final demonstration that he had no idea of air expansion within the channel. The felt was added to serve "the purpose of windproofing and weatherproofing the sash in the channel," like the lips, $c^5$, of the patent. Of course, there was some clearance, as there had to be if the windows were to work at all. The blue prints were drawn as nearly as possible after the installation, and the clearance at each side and at each end appears to be one-sixteenth of an inch, making a passage of constant width all around the inside of the channel, and also of equal width to the opening between the sash plate and one jaw of the box, when the plate is pressed against the other jaw as the wind would press it. Thus the wind could not expand on entering, but would pass with equal pressure all around to the point where it must enter the room; i. e., the inner contact of the sash plate and the jaw of the box. In this respect the window did not embody the invention of Campbell.

It may be that the triangular channels of the defendant and of Keighley and of Ruth were not intended to have the effect which they do. Perhaps they were meant for no more than to insure the edge

contact. But they did in fact more or less allow air expansion, and it is never an answer in the mouth of an infringer that he practises the invention imperfectly. It may be possible so to reduce the air spaces as to lose all substantial expansion, still keeping the edge contact and contact with the rear plate. If the defendant truly thinks that this feature of the invention is without value, let it adopt that form. Another question will then arise, as to which I indicate no opinion till it is adopted. But the defendant in the form in suit was not content to follow Keighley and took over all the elements of the invention. Perhaps it is significant that type A appeared after the patent was known. At least it must be said that the openings within the jambs are true openings into them, not mere grooves. To some degree they realize all the functions of the invention, to whose claims, in addition, they respond verbally. It seems to me to be no injustice to hold the defendant to the forms which are open to them in the art—to Keighley, for example, whose patent has expired.

Decree for the plaintiff on all claims, with costs.