251 F.2d 801
 116 U.S.P.Q. 32
 Harry X. BERGMAN, Perma-Lox Aluminum Shingle Corporation and
Victor H. Langville, doing business under the
assumed name of Langville Manufacturing
Company, Appellants,
v.
ALUMINUM LOCK SHINGLE CORPORATION OF AMERICA, Appellee.
 No. 15589.
 United States Court of Appeals Ninth Circuit.
 Dec. 13, 1957, Rehearing Denied Feb. 14, 1958.
 
 J. Pierre Kolisch, Ramsey & Kolisch, Portland, Ore., for appellants.
 S. J. Bischoff, Portland, Ore., for appellee.
 Before HEALY, POPE and LEMMON, Circuit Judges.
 LEMMON, Circuit Judge.
 Twilight is falling upon 'gadgets' as subjects of patents. The dusk commenced to gather half a dozen years ago when, in an epochal decision,[1] the Supreme Court fixed its canon against dignifying combined 'segments of prior art' with the title of 'inventions'.
 In a concurring opinion in that case, Mr. Justice Douglas compiled a devastating list of 'gadgets' that have been placed 'under the armour of patents'.[2] The specification at bar proclaims at the outset that it is a 'drain slot which forms the basis of this invention'. If the trivial devices listed by Mr. Justice Douglas are 'gadgets', then, in the hierarchy of invention, a slot should be classified as a subgadget-- comparable to the hole in a doughnut.
 
 
 1
 This is the second time that the patent in suit, Korter No. 2,631,552 has been before this Court. The first appeal was dismissed because the so-called decree of the Court below was not a final decision, within the meaning of 28 U.S.C.A. 1291, and was therefore not appealable. Bergman v. Aluminum Lock Shingle Corp. of America, 9 Cir., 1956, 237 F.2d 386, 387.
 
 
 2
 This second appeal is on the merits. For our present purposes, the earlier opinion contains a sufficient statement of the case, except that it should be added that the District Court amended its original decree by stating:
 
 
 3
 'That there is no just reason for delay in entering final judgment and decree for plaintiff and against the defendants on the following issues:'
 
 
 4
 By this amendment the lower court conformed to the requirements of Fed.Rules Civ.Proc. Rule 54(b), 28 U.S.C.A. relative to a 'Judgment Upon Multiple Claims'.
 
 
 5
 The District Court adhered to its original decree in holding that (1) the patent in suit is valid; that (2) it has been infringed; and that the appellants were enjoined from making, selling, etc., 'any aluminum shingles which which infringe' the patent in suit.
 
 
 6
 On September 24, 1957, the appellee filed a motion to strike from the appellants' brief filed on the former appeal a copy of Patent No. 2,173,774, issued to Birch and Childers, on the ground that the document was not included in the appellants' contentions in the pretrial order, etc. The motion is granted.
 
 
 7
 On October 10, 1957, the appellants moved to strike the appellee's supplemental brief on the grounds that it was filed to late and not in accordance with the requirements of Rule 18(3) of this Court, 28 U.S.C.A.; that is to say, on September 27, 1957. Although we believe that the appellants are technically correct in their contention, we are also of the view that in a case of this complexity, the rule can be properly relaxed, so as to give the Court the benefit of counsel's views. The motion is denied.
 
 1. The Claim in Suit
 
 8
 The instant patent contains only one claim, which reads as follows:
 
 
 9
 'I claim:
 
 
 10
 'An aluminum shingle of rectangular shape, said shingle comprising a substantially flat sheet of metal of uniform thickness and the body of which lies substantially in the same plane, corrugations in said shingle spaced laterally of the shingle, said corrugations forming ridges on the inner face of the shingle, the lateral edges of the shingle being reversely turned on opposite faces of said shingle providing curved outer edge portions for interlocking the shingle with laterally adjacent shingles, the top and bottom edge portions of the shingle being reversely turned on opposite faces thereof, each of said top and bottom turned edge portions comprising a half-round portion, one side of which is tangent to the plane of the shingle and the other side of which terminates in a reversely curved portionThe turned bottom portion forming a gutter and the reversely curved portion thereof being engageable with a reversely curved top edge portion of a lower adjacent shingle to form a close fit there-between, a fastening tab integral with the shingle and extending from an upper corner of said shingle for securing the same to a roof structure, and a drain slot disposed in the gutter of said shingle for draining water therefrom, said corrugation ridges on the inner face of the shingle adapted to space said reversely turned top edge portion of the lower adjacent shingle from the inner face of said shingle so that moisture can travel along the inner face of the shingle and into said gutter.'
 
 
 11
 2. A Patent Case Presents Mixed Questions of Law and Fact
 
 
 12
 On the first day of the trial, counsel for the appellants started to discuss the case of Kwikset Locks, Inc., v. Hillgren, 9 Cir., 1954, 210 F.2d 483, certiorari denied 1954, 347 U.S. 989, 74 S.Ct. 852, 98 L.Ed. 1123, rehearing denied 1954, 348 U.S. 852, 75 S.Ct. 19, 99 L.Ed. 671, certiorari denied 1954, 348 U.S. 855, 75 S.Ct. 78, 99 L.Ed. 673. The following colloquy ensued:
 
 
 13
 'The Court: There is no law in patent cases. A patent case is a question of fact.
 
 
 14
 'Mr. Kolisch: Pardon?
 
 
 15
 'The Court: I say, there is no law in a patent case. A patent case is a question of fact.
 
 
 16
 'Mr. Kolisch: The Court of Appeals discusses that, also the questions of fact and questions of law.
 
 
 17
 'The Court: It is only a question of fact. That is all there is, a question of fact. I don't care what the Circuit Court said about it, anyway.'
 
 
 18
 The appellants complain that the District Court erred in this holding.
 
 
 19
 We agree with the appellants that the above statement of the Court was erroneous.
 
 
 20
 In Atlantic & Pacific, supra, 340 U.S. at page 155, 71 S.Ct. at page 132, in the concurring opinion of Mr. Justice Douglas, we find the following correct statement of the law:
 
 
 21
 'The standard of patentability is a constitutional standard; and the question of validity of a patent is a question of law.'
 
 
 22
 Mr. Justice Douglas cited the case of Mahn v. Harwood, 1884, 112 U.S. 354, 358-359, 5 S.Ct. 174, 177, 6 S.Ct. 451, 28 L.Ed. 665, in which the Supreme Court used the following language:
 
 
 23
 'In cases of patents for inventions, a valid defense, not given by the statute, often arises where the question is whether the thing patented amounts to a patentable invention. This being a question of law, the courts are not bound by the decision of the commissioner, although he must necessarily pass upon it. (Many cases cited.)'
 
 
 24
 If further authority were needed, it could be found in the bulging libraries of text and decisional patent law.
 
 
 25
 3. Once Invalidity Is Established, It Is Unnecessary to Consider the Question of Infringement.
 
 
 26
 There is a growing and pragmatical tendency among courts not to inquire into the alleged infringement of a patent once it has been found to be invalid.
 
 
 27
 This trend probably has been encouraged by an observation in Sinclair & Carroll Co., Inc., v. Interchemical Corporation, 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, where the Court said:
 
 
 28
 'There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. (Cases cited.) It has come to be recognized, however, that of the two questions, validity has the greater public importance, * * *.'
 
 
 29
 Realizing that an invalid patent cannot be infringed, many Federal courts have correctly proceeded no further after finding a patent void.
 
 
 30
 In J. R. Clark Company v. Murray Metal Products Company, 5 Cir., 1955, 219 F.2d 313, 318, the Court said:
 
 
 31
 'Whether assuming Claim 1's validity, appellant might be entitled to prevail on the closer issue of infringement, we think it unnecessary for us to decide. Expressly pretermitting any holding upon that issue, we prefer to predicate our decision on what appears to us more solid ground, i.e. the proven invalidity of the patent in suit, both as anticipated in fact by the prior art, and for its failure, as a matter of law, to disclose that degree of novelty now required in order to vest a patentee with the statutory monopoly which an enforceable patent grants. (Cases cited.)'
 
 
 32
 And in National Transformer Corp. v. France Mfg. Co., 6 Cir., 1954,215 F.2d 343, 359, the Court thus tersely expressed the current trend:
 
 
 33
 'Where patents are found to be invalid, it is not necessary to pass upon the insues of infringement. (Case cited.)'[3]
 
 4. The Prior Art
 
 34
 In their answer, the appellants asserted that the appellee's alleged invention has been anticipated in thirteen letters patent. In the pre-trial order, the appellants' 'Contentions' are alleged to include, inter alia, assertions that the alleged invention was anticipated by eight domestic and one foreign patent. The appellants' exhibits listed in the pre-trial order, however, include copies of eleven patents.
 
 
 35
 We will confine our discussion to those patents principally relied upon by the appellants in their briefs in this Court. And under the facts of this case, we need not be concerned with the proceedings in the Patent Office. In Westinghouse Electric & Mfg. Co. v. Condit Electrical Mfg. Co., 2 Cir., 1911, 194 F. 427, 430, Judge Noyes (not Judge Learned Hand, as appellee states)[4] used the following language:
 
 
 36
 'We have reached the conclusion of invalidity without referring to the proceedings in the Patent Office because we fail to see that those proceedings have any bearing upon the questions arising in this case. Sometimes such proceedings are of importance, especially where a matter of estoppel is involved. Thus a patentee who, in order to avoid a rejection of his application, inserts limitations in his claim is estopped from contending that the patent as issued should be construed as if such limitations had not been made. But, as a general rule, the interpretation to be placed upon the claims and specification of a patent is to be determined from the language of the grant, and the proceedings in the Patent Office are quite immaterial.'
 
 
 37
 The Westinghouse case was cited with approval by Mr. Justice (later Mr. Chief Justice) Stone in Smith v. Snow, 294 U.S. 1, 16, 55 S.Ct. 279, 79 L.Ed. 721, upon this precise point dealing with proceedings in the Patent Office. See also Campbell Metal Window Corporation v. S. H. Pomeroy & Co., supra, D.C.N.Y., 1924, 300 F. 872, 874, twice quoted and twice cited by the appellee itself.
 
 
 38
 Furthermore, we agree with the appellee that the appellants' case is built up on alleged file wrapper estoppel to avoid infringement. The appellants themselves make this clear when they assert:
 
 
 39
 'Certainly it is entirely proper for appellants to refer to the file wrapper of the Korter applications to show that the term 'drain slot' as used in the claim was intended to refer to something other than is shown by Miller, or by De Sincay, or by the (appellant) Bergman.'
 
 
 40
 Again, in the appellants' reply brief, it is pointed out that 'this is a clear case for application of the doctrine of file wrapper estoppel for the reason that the term 'drain slot' does not read squarely upon the accused product'. This again is the language of infringement, not of validity.
 
 
 41
 As has already been stated, however, we believe that the issue of validity is dispositive of this appeal.
 
 
 42
 (a) Miller 2,243,256, May 27, 1941.
 
 Miller claims, inter alid, the following:
 
 43
 '8. A shingle comprising a rectangular metal sheet having in its central portion a double fold dividing it into upper and lower halves, one half having a plurality of speaced transverse ridges embossed on its upper side dividing it into panels of three different widths, namely, a plurality of relatively small panels of the same width, a plurality of relatively large panels, each approximately twice the width of a small panel, and a plurality of panels of intermediate width, each approximately one-half wider than one of said small panels, the ridges being arranged so that adjacent panels are of different widths and large panels are at the ends of said half, and the other of said halves having a plurality of spaced transverse ridges embossed on the upper side, each of the latter ridges bisecting one of the panels on said first-mentioned half.'
 
 
 44
 The appellants point out that Miller calls for a shingle with transverse ridges, which are comparable to the appellee's 'corrugations', 'spaced laterally', 'said corrugations forming ridges on the inner face of the shingle'. Miller's reversely turned flanges, correspond to the appellee's 'lateral edges * * * reversely turned on opposite faces' of the shingles. Other similarities are found in Miller's edge, rounded, and curved portions of flanges, underturned and overturned flanges, open corner, etc.
 
 
 45
 Miller's specifications teach that 'The nails which hold the units to the roof are all covered by the shingles and the interlocking connections between the shingles are so formed as to permit the free drainage of rain-water that may be driven into such connections, * * *'Further on, Miller states:
 
 
 46
 'As shown best in Figs. 7 and 8, the end flanges are bent so that they interlock with a minimum amount of surface contract with one another and with the bodies of the shingles, thus permitting free drainage of water and facilitating the sliding of one shingle with respect to the adjacent shingles when the shingles are being assembled on a roof.'
 
 
 47
 In commenting upon the asserted parallelism, the appellee complains that the 'appellants have made no entry of any element in Miller that would correspond to the rectangular form' of an aluminum shingle in the appellee's patent. 'This is for the reason that Miller does not show an 'aluminum' shingle,' the appellee declares.
 
 
 48
 Miller's patent, however, does call for a 'Metal Roof Covering'. Use of some special but well-known material does not constitute invention. In Gardner v. Herz, 1886, 118 U.S. 180, 192, 6 S.Ct. 1027, 1034, 30 L.Ed. 158, the Court said:
 
 
 49
 'But a patent cannot be taken out for an article old in purpose and shape and mode of use, when made for the first time out of an existing material, and with accompaniments before applied to such an article, merely because the idea has occurred that it would be a good thing to make the article out of that particular old material.'[5]
 
 
 50
 In his caustic 'list of incredible patents which the Patent Office has spawned', Mr. Justice Douglas, in Atlantic & Pacific, supra, 340 U.S. at page 156, 71 S.Ct. at page 132, includes the following instances of patents inprovidently granted for the use of certain well-known materials:
 
 
 51
 'Hotchkiss Ex'x v. Greenwood, 11 How. 248, 13 L.Ed. 683: Doorknob made of clay rather than matal or wood, where different shaped door knobs had previously been made of clay.
 
 
 52
 'Union Paper Collar Co. v. Van Dusen, 23 Wall. 530, 23 L.Ed. 128: Making collars of parchment paper where line paper and linen had previously been used.'
 
 
 53
 (b) De Sincay, No. 339, July 23, 1869
 
 
 54
 De Sincay's patent for 'metallic tiles' specifies:
 
 
 55
 '* * * lateral flanges E, F, by which (the tiles) are connected together, and also * * * ears G, H, for securing the titles to the framing of the roof. The ears G are fixed at one corner of the tiles, while the ears H are made to hook on to the flanges E and are also secured by nailing to the rafters. The number of these ears H varies according to the size of the tiles. * * *
 
 
 56
 'The tiles of my invention are further designed with a view to prevent the admission of wet or moisture. For this purpose the four lateral flanges by which the tiles are connected together are provided with hollow beads or rims J, so that when the tiles are superposed a free space is left between them, and the wind is prevented from entering under the tiles, while the reflux of the rain water cannot take place. Owing to the slant of the roof and the disposition of the flanges any water which may have penetrated to a certain extent between the tiles under the action of a high wind will run off to the lower corner K of the tiles, and so onto the roof. This improved mode of attaching the tiles the one to the other is adapted to tiles of all dimensions, whether made of zinc of other metal.'
 
 
 57
 The appellee contends that de Sincay 'did not wish rain water to be driven over the inner-surance of the shingle from the outside. But in Korter the problem is how to get rid of moisture that does not come from reing weather but instead comes from the condensation of moisture that originates on the innersurface of the shingle, quite a different matter.'
 
 
 58
 Here the appellee is in error on three counts: (1) 'in Korter the problem is' not only 'how to get rid of moisture that does not come from rainy weather.' Korter is also concerned with 'getting rid' of moisture that does come from 'rainy weather'. At the outset of his patent, it will be remembered, he states that his 'metal shingle' 'is made to prevent leakage from heavy run-off, on (or?) condensation, or both.'
 
 
 59
 And further on in his patent, Korter specifies that he has provided the ubiquitous 'drain slot' to 'overcome' the 'possibility' of 'a trap in which rain water and condensation can collect and finally form a leak.'
 
 
 60
 (2) Conversely, de Sincay does not limit the purpose of his invention as being to prevent the leakage of rain water. In fact, 'rain water' is mentioned only once in his letters patent, while both in his provisional specification and his final specification de Sincay uses the terms 'wet', 'moisture', and 'any water'.
 
 
 61
 (3) Korter's claim itself states that the slot is for 'draining water'. Inner 'moisture' is mentioned later.
 
 
 62
 In any event, water is still H(2)O, whethit is driven in from the rain and wind on the outside or comes from condensation occurring on the inner surface of a shingle.
 
 
 63
 Here again Mr. Justice Douglas's devastating list of 'gadget' patents affords an interesting analogue:
 
 
 64
 'Preston v. Manard, 116 U.S. 661, 6 S.Ct. 695, 29 L.Ed. 763: A hose reel of large diameter so that water may flow through hose while it is wound on the reel.' 340 U.S. at page 157, 71 S.Ct. at page 132.
 
 
 65
 Having examined each of the ten prior patents contained in the book of exhibits that forms part of the record on this appeal, we find that, considered together, in one respect or another they anticipate the patent in suit.
 
 
 66
 5. The Calim Is To Be Read in the Light of the Specification
 
 
 67
 It is well settled, in this Circuit and elsewhere, that a claim is construed in the light of the specification.
 
 
 68
 In Schnizer v. California Corrugated Culvert Co., 9 Cir., 1944, 140 F.2d 275, 276, Judge Healy used the following language:
 
 
 69
 'The claim is to be read in connection with the specifications. (Many cases cited.) Where the claim uses broader language than the specifications, reference may be had to the latter for the purpose of limiting the claim. (Cases cited.)'[6]
 
 
 70
 We have already noted that Korter's specification states that 'the basis of this invention' is the 'drain slot'. The appellee is bound by this self-imposed limitation.
 
 
 71
 But even if it were not so bound, the appellee's position would not be improved; for, as we have just seen in the preceding section, there is nothing else new in the patent.
 
 
 72
 6. A Combination Patent Is To Be Strictly Construed
 
 
 73
 The appellee concedes that his patent claim is of the combination type.
 
 
 74
 In 69 C.J.S. Patents 204 and 213, pages 686-687 and 726-727, the rule of construction here applicable is thus tersely stated:
 
 
 75
 '* * * claims will be given a strict or narrow construction where the art or field is crowded or well developed, and the discovery is merely a minicing step forward.
 
 
 76
 'A strict or narrow construction of the claims has also been required where the patent is not a pioneer patent, or where the patentee is not a pioneer with respect to any of the disclosures of the claims, * * *
 
 
 77
 'As a general rule the claims of a patent for a combination covering old elements are to be strictly or narrowly construed, and are to be limited to the specific language used; * * *.'
 
 
 78
 7. At Most, the Appellee's Patent Teaches an Improvement of One Part of on Old Combination, and Therfore Does Not Amount to Invention.
 
 
 79
 Not only in its patent but also in its brief, the appellee not merely admits but insists that the 'drain slot' is 'the basis of this invention'. In the brief we find the following statement:
 
 
 80
 'The feature that is indispensable is the fact that the drain slot must be disposed in the gutter of the shingle 'for draining water therefrom', as is set forth in Korter's claim.'
 
 
 81
 Furthermore, we find by actual count that the expression 'drain slot', 'drain opening', 'slot', or 'opening' appears 75 times in the appellee's 72-page brief, or an average of more than once in every page. This does not include the frequent references to a 'crack' or a 'crevice'.
 
 
 82
 In other words, the explicit reference in the appellee's specification to its 'drain slot' as 'the basis of this invention' is not an isolated and thoughtless admission. It represents the carefully-considered and fundamental belief of the patentee and his assignee.
 
 
 83
 Be that as it may, the 'drain slot' is, in fact and in law, the nearest approach to an 'improvement' over the prior art.
 
 
 84
 And in a combination patent, such an 'improvement' does not amount to invention.
 
 
 85
 In Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549-550, 58 S.Ct. 662, 664, 82 L.Ed. 1008, the rule is thus spelled out for us:
 
 
 86
 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination.'
 
 
 87
 [Emphasis supplied.][7]
 
 
 88
 8. In Upholding the Patent, the District Court Failed to Make the Necessary Specific Finding of 'An Additional and Different Function in Combination'.
 
 
 89
 In the Kwikset Locks case, supra, 210 F.2d at page 486, we pointed out that, in Atlantic & Pacific, supra, 'The Supreme Court further requires that in order for a combination patent to be upheld, there must be a specific finding that the old elements which made up this device perform an additional and different function in combination, than they perform out of it.'
 
 
 90
 As in Kwitkset Locks, 'No such finding was made in the case at bar.' Regardless of any other defect, such a lack makes it impossible for the present decree to be sustained.
 
 9. Conclusion
 
 91
 'The drain slot * * * forms the basis of this invention,' the inventor has told us.
 
 
 92
 In other words, his patent is built upon a foundation even less substantial than sand. It is constructed upon a slot-- in other words, upon a hole.
 
 
 93
 Such a patent cannot stand. At most, it 'is merely a mincing step forward'.
 
 
 94
 We hold that the appellee's patent, Korter No. 2,631,552, is invalid for want of novelty and invention, being anticipated by the prior art.
 
 The judgment of the District Court is
 
 95
 Reversed.
 
 
 96
 POPE, Circuit Judge (concurring).
 
 
 97
 I think that Judge LEMMON'S opinion performs a particularly useful service in doing away with a frequent misapprehension that the question of the validity of a claim of a patent is solely one of fact. In this case there was no patentable invention for the simple reason that it comes precisely within the language of Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' The quoted statement is a rule of law. It sets a legal standard or test of invention. For failure to meet this legal standard appellee must fail. Thus we determine that there is no invention here as a matter of law.
 
 
 98
 This is not to say that the decision in a patent case may not turn upon a question of fact; as for instance where the court must determine whether the mechanical device or the process now claimed to be invention was something that existed or was known or used in the past. But it is necessary in reading the opinions dealing with the question of validity of patents to bear this distinction in mind, otherwise considerable confusion may result. Thus in Stauffer v. Slenderella Systems of California, Inc., 9 Cir., F.2d , , (decided Nov. 15, 1957) we said: 'This court has consistently held that the question of validity of a claim of a patent is one of fact.'[1] On the other hand, in Kwikset Locks v. Hillgren, 9 Cir., 210 F.2d 483, 488, this court rejected the argument made by the patentee whose claim of invention had been sustained by the findings of the district court, that 'A finding of validity is a finding of fact which cannot be reversed unless clearly erroneous', and said: 'However, we must also recognize 'that it is the 'standard of invention' that controls. That is present in every case where the validity of a patent is in issue. It is that question which the Court must decide. No 'finding of fact' can be a substitute for it in any case."[2] In like manner in Oriental Foods v. Chun King Sales, 9 Cir., 244 F.2d 909, 913, this court, again holding invalid for want of invention a claim of patent which the trial court had held represented invention over the prior art, followed Kwikset Locks v. Hillgren, supra, and said: 'The standard of invention in written into the Constitution. The Supreme Court has held that the determination by the trial court of the question of invention need not be accorded the respect given ordinaty findings of fact.'[3]
 
 
 99
 I have no doubt that an uncritical reading of these various statements found in our decisions might give rise to some confusion.[4] If I thought that our holding in the present case that the question of the validity of this patent is one of law represented a true conflict with prior holdings of this court, I would think it important that we should call for a hearing by the whole court sitting en banc in order to resolve that conflict. But I am satisfied from a study of our prior decisions that the conflict is more apparent that real.
 
 
 100
 Prior to the decision of the Supreme Court in Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, this court stated and seems to have held in an extended line of decisions that the question of invention presented a question of fact. A case much cited was Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 151 F.2d 91, 94, where in referring to the appellant's contention that the combinations did not involve invention and that therefore the claims were invalid, we said: 'The question thus presented was one of fact.' In so holding we relied upon Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 446, 44 S.Ct. 533, 534, 68 L.Ed. 1098, where the Court said: 'The question whether an improvement requires mere mechanical skill or the exercise of the faculty of invention, is one of fact; and in an action at law for infringement is to be left to the determination of the jury.' Other earlier decisions of this court expressing similar views are Maulsby v. Conzevoy, 161 F.2d 165, 167; Refrigeration Engineering v. York Corp., 168 F.2d 896; Faulkner v. Gibbs, 170 F.2d 34, and Lane-Wells Co. v. M. O. Johnston Oil Field Serv. Corp., 181 F.2d 707. However, on December 4, 1950, the Supreme Court handed down its decision in Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, involving a combination patent. It noted that 'The Court of Appeals regarded this finding of invention as one of fact, sustained by substantial evidence, and affirmed it as not clearly erroneous.' It spoke of the inadequacy of its earlier decisions in defining the indicia of invention a court should require, referring to the 'imprecision of our language' and said that the Court '* * * never has ventured to give a precise and comprehensive definition of the test to be applied in such cases.' The Court then restated the standard applied in Lincoln Engineering Co. v. Stewart-Warner Corp., quoted supra, and rejected the argument that since two courts had made findings of fact in favor of the alleged invention the Supreme Court should not undertake to review them. It said (340 U.S. at page 153, 71 S.Ct. at page 131): 'The questions of general importance considered here are not contingent upon resolving conflicting testimony, for the facts are little in dispute. We set aside no finding of fact as to invention, for none has been made except as to the extension of the counter, which cannot stand as a matter of law.'[5] (Emphasis added)The courts of appeals began to recognize that in the Great A. & P. Tea Co. decision the Supreme Court had now more precisely defined the nature of the judicial process by which the question of invention is to be determined and from that time on this court has generally adhered to the rule which Judge Lemmon has so well stated for us in this decision.
 
 
 101
 The first real test of where this court stood following the Great A. & P. Tea Co. case came in Himes v. Chadwick, 9 Cir., 199 F.2d 100. In that case a jury returned a verdict finding the claims in issue to be valid and infringed. Upon a motion for judgment notwithstanding the verdict, the court (Judge Lemmon presiding), granted the motion and entered judgment holding the claims in issue to be invalid. On appeal it was argued that the question of the presence or absence of patentable invention was a question of fact within the province of the jury to determine and the right of the court to determine invalidity of the patents notwithstanding the jury's verdict was challenged. In dealing with the question of the right and duty of the trial judge to direct a verdict in a patent case, where the circumstances indicated that the jury had departed from the relevant legal criteria for determining patentability, this court cited and relied upon the Third Circuit's decision in Packwood v. Briggs & Stratton Corp., 195 F.2d 971, 973, a case which duly noted the significance of Great A. & P. Tea Co.[6] We gave emphatic approval to the discussion by that court of the proposition that over the years the Supreme Court has developed and laid down rules and standards for use as guides in the determination of what is invention within the meaning of the Constitution and the patent laws. Using the language of the Packwood case: 'Once such standards and rules are authoritatively announced any finding of 'invention' whether by a court or a jury must be consistent with them', this court proceeded to sustain the judgment of invalidity notwithstanding the verdict of validity. The claims involved did not measure up to established legal standards for invention.
 
 
 102
 This case was followed by our decision in Kwikset Locks v. Hillgren, supra. Thereafter, in Coleman Co. v. Holly Manufacturing Co., 233 F.2d 71, notwithstanding the trial court in upholding the validity of the patent there involved, had made elaborate findings of fact, Judge Bone, speaking for this court, examined the findings and the evidence at great length in the light of the teachings of Great A. & P. Tea Co., and after carefully testing the devices there involved against the legal standards for determination of invention and patentability laid down in that case, concluded that the device measured up to those standards and accordingly upheld the validity of the patent. I have noted Judge Barnes' statement in Oriental Foods v. Chun King Sales, supra, that 'The standard of invention is written in the Constitution.' In so stating he relied specifically on both the majority and the concurring opinions in the Great A. & P. Tea Co. case.
 
 
 103
 This fairly extended line of decisions in this court since the Great A. & P. Tea Co. decision demonstrates, I think, that we are here approving the accepted doctrine that the question of invention must be tested by an application of the established legal standards referred to in the Packwood case, supra. This does not mean of course that the question of the validity of a claimed invention may not turn on a question of fact. In this respect a patent case is no different from any other kind. Generally speaking some cases will turn on a question of law and other cases will turn on a question of fact. To my mind a case well illustrating this is Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672. One question before the Court was whether there was invention. This depended upon what was the state of the prior art in the field of electric welding. At the trial many witnesses were called, some of them experts, and many demonstrations were made to permit the court to learn the stage the prior art had reached. It was claimed that the results produced by the processes involved in the invention were quite different than those possible under all prior methods in the prior art. Not only did the judge hear and see witnesses whose credibility and qualifications he might judge, but he visited laboratories and observed demonstrations of the welding taught by the patent and as done under various stages of the prior art. The judge found that there was a remarkable difference between what could be done under the invention and what had gone on before. The Supreme Court declined to reverse the decision upholding these claims of the patent. Plainly enough that was a case in which the validity of the invention 'turned upon' a question of fact.[7]
 
 
 104
 It is my view that a study of this court's decisions since the Great A. & P. Tea Co. case, supra, which have stated that the question of invention is one of fact, will demonstrate either that such statement in that unqualified form was unnecessary to the decision, or else that the court was saying in substance that under the particular facts of the case the decision 'turned upon' questions of fact. Thus in Leishman v. General Motors Corp., 9 Cir., 191 F.2d 522, this court upheld the trial court's finding that certain characteristics of the patented device were anticipated by an earlier patent, and that the earlier patent had functions and modes of operation which were identical with those of the patented device. This finding was based upon oral testimony of engineers describing and explaining the engineering principles involved and that they were long known to machine designers as a means of accomplishing the same object. We said (at page 529): 'We think therefore that this particular finding must be held to be the result of a determination of a question of fact, which cannot be said to be clearly erroenous, and that Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A., prohibits us from disturbing it.' In this we relied upon the decision of the Supreme Court in Graver Tank & Mfg. Co. v. Linde Air Products Co., supra, concluding, '* * * where as here, the decision turned upon questions of fact, an appellate court is not in a position to try such fact questions de novo.'
 
 
 105
 In the Leishman case, as in the Graver case, the question of invention involved mixed questions of fact and law. The legal standard was a most simple one, namely, that to have invention there must be something new. In each of those cases the legal standard was not satisfied if the prior art had produced the same thing that was claimed in the invention. In Graver the court found that the prior art did not include the principle claimed. In Leishman, the trial court found that the prior art did include it. In each case the decision 'turned upon' a question of fact; but in neither case could it properly be said without qualification that the question of validity of a claim of a patent is one of fact.
 
 
 106
 Our cases decided since Great A. & P. Tea Co., are not inconsistent with what I think is well stated in Deller's Walker on Patents, 1957 Supp., to page 115 of Volume 1 of the original text, as follows: 'The conflict between the statement that the question of invention is one of fact and the almost innumerable instances in which the courts have dealt with it as though it were one of law, can only be explained by breaking the question of patentable invention down into its component parts: what the prior art was and what the patentee did to improve upon it, and then, whether what the patentee did is properly to be classified as an invention. The nature of the prior art and the nature of what the patentee did to improve upon it must always be questions of fact. The question of the name to be given to what was done by the patentee, whether it is to be called an invention over the prior art or whether it is not, is a question fundamentally of the meaning of the words used in the statute (35 U.S.C. 31), and as such would seem to be a question of law.'
 
 
 
 [1]
 Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., hereinafter 'Atlantic & Pacific', 1950, 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162
 
 
 [2]
 340 U.S. at pages 156-158, 71 S.Ct. at pages 132
 
 
 [3]
 See also Measurements Corporation v. Ferris Instrument Corporation, 3 Cir., 1947, 159 F.2d 590, 592; Robinson v. Digaetano, 5 Cir., 1954, 212 F.2d 1, 4; Fritz W. Glitsch & Sons, Inc., v. Wyatt Metal & Boiler Works, 5 Cir., 1955, 224 F.2d 331, 334; Thys Co. v. Oeste, D.C.Cal.1953, 111 F.Supp. 665, 674, affirmed Thys Co. v. Angelo California Nat. Bank, 9 Cir., 1955, 219 F.2d 131, certiorari denied 1955, 349 U.S. 946, 75 S.Ct. 875, 99 L.Ed. 1272, rehearing denied 1955, 350 U.S. 855, 76 S.Ct. 40, 100 L.Ed. 760
 
 
 [4]
 The appellee compounds its error by having 'Judge Learned Hand' 'adopt', in the opinion in 194 F. 427, 'the law set forth' thirteen years later by him in the Campbell Metal Window Corporation case, infra, reported in Volume 300 of the Federal Reporter. The blunder is repeated in the appendix to the appellee's brief, in which, after citing the earlier Westinghouse case, the appellee tells us that Judge Hand 'adhered to the general rule as set forth in' the later Campbell case
 
 
 [5]
 See also Berkeley Pump Co. v. Jacuzzi Bros., 9 Cir., 1954, 214 F.2d 785, 788-789, note 2, final paragraph
 
 
 [6]
 See also Henry v. City of Los Angeles, 9 Cir., 1919, 255 F. 769, 780; Johnston v. Atlas Mineral Products Co. of Pennsylvania, 6 Cir., 1944, 140 F.2d 282, 284
 
 
 [7]
 See also Jacuzzi Bros., Inc., v. Berkeley Pump Co., 9 Cir., 1951, 191 F.2d 632, 637; Kwikset Locks v. Hillgren, supra, 210 F.2d at page 486-487; Hunter Oouglas Corp. v. Lando Products, 9 Cir., 1954, 215 F.2d 372, 375; Powder Power Tool Corporation v. Powder Actuated Tool Company, 7 Cir., 1956, 230 F.2d 409, 415-416; Thys v. Oeste, supra, 111 F.Supp. at pages 672-674; Thys Co. v. Oeste, D.C.Cal., 1953, 114 F.Supp. 403, 407-408, affirmed Thys Co. v. Angelo California Nat. Bank, 9 Cir., 1955, 219 F.2d 131, 133, certiorari denied 1955, 349 U.S. 946, 75 S.Ct. 875, 99 L.Ed. 1272, rehearing denied 1955, 350 U.S. 855, 76 S.Ct. 40, 100 L.Ed. 760; E. Clemens Horst Co. v. Oeste, D.C.Cal., 1953, 114 F.Supp. 408, 410. Cf. Stanley Works v. Rockwell Mfg. Co., 3 Cir., 1953, 203 F.2d 846, 849, certiorari denied 1953, 346 U.S. 818, 74 S.Ct. 30, 98 L.Ed. 345
 
 
 [1]
 The court added a footnote citing other decisions of this court in which similar language had been used
 
 
 [2]
 This quoted language is that of Mr. Justice Douglas, concurring, in Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. at page 156, 71 S.Ct. at page 132
 
 
 [3]
 The court at the same time alluded to the recent case of Hall v. Wright, 9 Cir., 240 F.2d 787, 790, in which we had said that 'The question of novelty and invention of a patented device or method is a question of fact', and expressly declined to modify that statement
 
 
 [4]
 For a suggestion that there may have been confusion elsewhere see Noble Co. v. C. S. Johnson Company, 7 Cir., 241 F.2d 469, footnote at page 477
 
 
 [5]
 This statement from the opinion of Mr. Justice Jackson, who spoke for the majority of the Court, is plainly in full agreement with that made in the concuring opinion of Mr. Justice Douglas, (340 U.S. at page 156, 71 S.Ct. at page 132), as follows: 'The Court now recognizes what has long been apparent in our cases: that it is the 'standard of invention' that controls. That is present in every case where the validity of a patent is in issue. It is that question which the Court must decide. No 'finding of fact' can be a substitute for it in any case. The question of invention goes back to the constitutional standard in every case. We speak with final authority on that constitutional issue as we do on many others.' That the Court itself recognized that both Mr. Justice Douglas and Mr. Justice Jackson were in agreement upon this point is apparent from the allusion to that case in the footnote to Dalehite v. United States, 346 U.S. 15, at page 24, 73 S.Ct. 956, 97 L.Ed. 1427
 
 
 [6]
 The Packwood case has been often followed in its own circuit. See, e.g., Nachtman v. Jones & Laughlin Steel Corp., 3 Cir., 235 F.2d 211
 
 
 [7]
 In his concurring opinion in the Great A. & P. Tea Co. case, Mr. Justice Douglas suggests that that case overruled the Graver case. I find no such statement in the majority opinion; that may be because the majority considered Graver could be distinguished as here suggested